THE STATE v. BRUCE BIDSTRUP, Appellant.

Division Two, November 14, 1911.

1. EVIDENCE: Plat: Must Be Correct. Plats and diagrams, descriptive of the place or locality involved in the issues on trial, to be admissible as independent evidence, must be shown to be accurate and correct. If the plat offered is shown to be so inaccurate that it would be confusing rather than helpful to the jury, it is properly excluded.

2. ———: Sufficient to Support Verdict: That of Adverse Party. If there is substantial evidence tending to prove the offense charged, the verdict will not be disturbed on appeal. And in determining its sufficiency, the court is not restricted to the testimony offered by the State, but will consider all evidence in the case, without regard to the party by whom it was introduced.

237 Sup.—18

3. ———: ———: **Defendant's: Maiming and Wounding Another.**
Defendant testified that prior to November· 13th some one entered his house and several times some one had been prowling about his house at night; that he had prepared to watch his premises to find out who the prowler was; that he concealed himself about fifty feet southeast of his house, with a double-barrelled shotgun, about 6:30 p. m., to watch for the trespasser; that in about thirty minutes he saw a man come to a lighted window on the south side of the house and peer through it, then back off, crouch down, remain in a crouching position for a short time, then arise and walk around to the north side, then return in a moment, walk close up to the window and stand looking into the house through the window; that the night was dark and he did not recognize the man; that he then aimed the gun at the man's legs, and fired; that the man turned around two or three times as if startled and confused, and then ran west towards defendant's front gate; that he ran towards him, called to him to stop, and, as he heard him still running, fired again in the direction in which the man had run; that carrying his gun, he ran towards the gate, and just before he reached it the man ran against it, and defendant ran up to him and for the first time recognized the man as a neighbor; that he struck at the man with his gun, and then dropped the gun and grappled with him; that they fell to the ground and then a struggle ensued, with first one and then the other on top; that the man drew his knife and cut defendant on the hand, after which defendant drew his own knife and began cutting at the man; that he realized that if the fight continued he must either kill the man or be killed by him, and for that reason he abandoned the conflict and ran back into his house, leaving his gun where it had fallen; that all this happened inside of defendant's yard; and that he went into his house and did not go out until sometime the next morning. The man was found in a short time in the public east-and-west road, about one hundred yards west of defendant's house, lying across a shotgun that was shown to belong to defendant, and was in great distress, was bleeding profusely, had been shot in the legs below the knees, and had been cut in the cheek with a sharp instrument. *Held*, that defendant's own testimony fully warranted the verdict, convicting him of maiming and wounding by shooting with a shotgun.

4. **SELF-DEFENSE: Inconsistent with Defendant's Testimony: Instruction.** The defendant in a criminal case is entitled to an instruction submitting the defense of self-defense, although such defense is inconsistent with his own testimony and arises upon facts and circumstances expressly denied by him, if such issue necessarily arises from testimony of the prosecuting witness or other witnesses.

5. ———: ———: ———: **On All Law of Case.** Under the statute (Sec. 5231, R. S. 1909), providing that, in criminal cases, "whether

State v. Bidstrup.

requested or not, the court must instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict," it is the duty of the court to give a proper instruction on the subject of self-defense, whether requested or not, if there is substantial evidence tending to prove that the defendant acted in self-defense, whether such testimony was introduced by the State or by the defendant, or in part by each, or whether it was introduced by the State and denied by the defendant.

6.    ————: ————: ————: ————: **Defendant as Witness: Judicial Admission.** When defendant goes on the stand as a witness, his testimony against his interest does not rise to the dignity of a judicial admission, and does not therefore preclude him from asserting rights based upon any other competent testimony in the case.

7.    ————: **When Available.** If a person has reasonable cause to apprehend immediate danger of death or great personal injury, he has a right to use such force as appears to him to be reasonably necessary to protect himself against such impending danger.

8.    ————: ————: **Upon Testimony of Prosecuting Witness Alone: Instruction.** The prosecuting witness testified that about seven o'clock of a dark November night he saw a man near his house and approaching his door; that the man walked away and got over the fence into the orchard; that he followed and called, "Hello," but received no response; that hearing the man running north he followed him and both ran through the timber and field for a distance of over a fourth of a mile; that when about half way across the field he, seeing the man was running in the direction of defendant's home, believed the man was defendant, and thereafter he kept to the east so as to be between the man and defendant's home; that when they were near a barbed wire fence on the north side of the field, which belonged to him, along a public road, and near the defendant's home, not hearing defendant, he advanced, looking for him, when a shot was fired close to him; that defendant then called him by name and told him not to come further or he would shoot again; that without speaking he continued to advance upon defendant, when a second shot was fired; that he then heard defendant getting through the wire fence into the public road, and he also got over the fence and into the road, between the defendant and his home, whereupon they grappled, and fighting fell to the ground, and while they were fighting defendant cut him with a knife. There was evidence that defendant bore ill will to the witness, and also that the ill will was mutual. *Held*, that upon this testimony alone it was incumbent upon the court to give an instruction on self-defense, although according to defendant's own testimony there was no right of self-defense in the case.

Appeal from Boone Circuit Court.—*Hon. Wm. H. Martin*, Judge.

REVERSED AND REMANDED.

*C. D. Corum* and *W. M. Williams* for appellant.

(1)   The court erred in excluding the diagram or plat offered in evidence by defendant. Ency. Evidence, 638; Battishill v. Humphrey, 31 N. W. 894; Western Gas Con. Co. v. Danner, 97 Fed. 886; Brown v. Galesburg P. B. & T. Co., 24 N. E. 523; LeBeau v. Telephone Co., 67 N. W. 339.   (2)   The court erred in refusing to submit to the jury the question of self-defense, based upon the testimony of the prosecuting witness, as asked by defendant.   (a)   Defendant was entitled to instructions submitting any issue presented by any of the testimony in the case.  It was the duty of the court to give instructions covering the law applicable to all the facts in evidence.   (b)   The testimony of the prosecuting witness authorized an instruction upon self-defense.  According to his statement, he saw defendant in his yard, but defendant had done no unlawful or wrongful act.  If he had entertained an intention to do any such thing, it was abandoned and he was endeavoring to leave the premises when he was pursued by the prosecuting witness, who ran after him in the dark across a twenty-acre tract of land, endeavoring to catch him.   The prosecuting witness was advancing upon the defendant at the time he claims both shots were fired.  He was told before the second shot not to come closer or defendant would shoot.  Notwithstanding, he still advanced upon the defendant.  Defendant had reasonable cause to believe from the prosecutor's actions that he intended to inflict great bodily harm upon him.  There was certainly evidence to take that issue to the jury. State v. Eaton, 75 Mo. 592; State v. Adler, 146 Mo. 18; Allison v.

United States, 160 U. S. 203; Roach v. State, 17 S. W. 464. (c) The instruction asked by the defendant and refused by the court sufficiently presented a request for instructions on self-defense.   If the instruction presented for any reason was objectionable, it was the duty of the court to give a proper one upon that subject.   State v. Adler, 146 Mo. 18; State v. Clark, 147 Mo. 20; State v. Davis, 141 Mo. 522; State v. Fox, 148 Mo. 517.   (3)  The verdict is against the evidence and is not supported by the testimony on the part of the State.

*Elliott W. Major*, Attorney-General, and *Campbell Cummings*, Assistant Attorney-General, for the State.

The five instructions, when read together, are exceedingly full and fair in covering appellant's right to defend his dwelling-house and inmates, by the use of the gun.   State v. Taylor, 143 Mo. 150; State v. Reed, 154 Mo. 162; State v. Pollard, 139 Mo. 220; Morgan v. Durfee, 69 Mo. 469; State v. Raper, 141 Mo. 326; State v. Kennade, 121 Mo. 405; State v. Matthews, 148 Mo. 185; Norris v. Whyte, 158 Mo. 20; 3 Cyc. 1045.   (2)  The only point not covered in said given instructions was that of self-defense, and for the evident reason that there was no such issue in the case. Appellant denied being on the prosecuting witness's premises, and also denied assaulting him there, and testified only to shooting him in the defense of his home and inmates on his own premises.   It is true that he testified further that when he grappled with the prosecuting witness on his own premises, after firing both loads of his shotgun, and after he was cut in the struggle on the ground, he used his own knife and cut the prosecuting witness, "had to do it or die," but he was not charged with an assault with a knife, but only with a shotgun; the court did not instruct

upon an assault with a knife and so the assault with the knife was not in issue and the court should not have so instructed. Moreover, it was in appellant's favor that the court did not instruct on the assault with the knife, and not having so instructed, no instruction on self-defense should have been given, as all of such evidnce on self-defense was confined to the assault with the knife. Sec. 5115, R. S. 1909. An instruction on self-defense would have been an instruction to the jury to have considered a matter entirely foreign to the real issue before them. State v. Smith, 214 Mo. 255; 12 Cyc. 652. If appellant had established perfect self-defense in his use of the knife, still, it would not have affected in the least the question of his guilt or innocence of his prior assault with the shot gun. So it was not a question of law or fact arising in the case that was necessary for their information in giving their verdict. Sec. 5231, R. S. 1909. It was not a misdirection of the jury in a material matter of law. Sec. 5284, R. S. 1909. The court's given instructions all limited the right of the jury to find appellant guilty only of the assault with the shot gun. If they failed to believe that he made the assault with the shot gun, they would have to acquit, so the assault with the knife was not in issue. If appellant had been charged with an assault with a deadly weapon not mentioned, then the case might have been different. The instructions should never enlarge upon the allegations in the information. State v. Kyle, 177 Mo. 659; State v. Scullin, 185 Mo. 709; State v. Moore, 178 Mo. 348; State v. Mulhall, 199 Mo. 202. Appellant must be guilty of the very crime charged. It should be borne in mind that this is not a charge of assault with intent to kill. which requires a specific intent; but only a felonious assault requiring but a general felonious intent and in the commission of such unlawful assault the prosecuting witness was maimed and wounded. The wound is the gravamen of the latter offense. The State did not have

to charge or prove each and every wound, maiming or disfiguring. One was sufficient to sustain the conviction, notwithstanding they were all inflicted during the one continuous assault. General felonious intent is sufficient—it is no excuse that he committed another crime.

KENNISH, P. J.—At the May term, 1910, of the circuit court of Cooper county, appellant was convicted of maiming and wounding one Elmer Brubaker, by shooting him with a shotgun. The punishment assessed was a fine of one thousand dollars and imprisonment in the county jail for one year. After unsuccessful motions for new trial and in arrest of judgment, defendant appealed to this court.

The testimony adduced at the trial showed the following facts, concerning which there was no material dispute:

Brubaker and the defendant both lived on what is known as the Warsaw and Boonville road, in Cooper county. This road runs along the west side and the north end of a twenty-acre tract of land owned by Brubaker. This tract is eighty rods long and forty rods wide. Brubaker lived near the southwest corner of the tract and the defendant near the northeast corner thereof. The residence of W. H. Varner is located near the northwest corner of the tract, on the north side of the road running east toward the defendant's home.

Shortly after seven o'clock p. m. on November 13, 1909, W. H. Varner, his son-in-law and another young man were at the Varner home. They heard two reports of a gun and very soon thereafter heard some person call Mr. Varner. The person calling seemed to be in distress. The night was very dark and the three men procured a lantern and went in search of the person who had called Mr. Varner. At a point in the road, about midway between Varner's front gate and the

home of the defendant, they found Brubaker lying in the road. · He was lying with his body across a shotgun that was shown to belong to the defendant and was in great distress and was bleeding profusely from his injuries. He had been cut in the cheek with a sharp instrument, and shot in the legs, below the knees, with a shotgun. He was carried to the Varner home and there cared for during the night. As a result of the wounds in his right leg, which became gangrenous, his leg was amputated on the following day. ·

There was no eyewitness to the shooting. Except as to the fact that Brubaker's injuries were inflicted by the defendant, the testimony of Brubaker contradicts the testimony of the defendant as to almost every fact and circumstance leading up to and connected with the encounter between the two.

Brubaker's account of the affair was as follows:

About seven o'clock p. m., on the day in question, he was at his own home and went to the barn to turn his horses out for the night. As he returned from the barn he saw a man pass between him and his kitchen window. He walked around to the north side of the house to see if the man was going to his front door. He did not find the man at the front door, but heard him climbing over the fence into the orchard, which was immediately north of his house. He followed into the orchard and called out, "Hello." He received no response, but heard the man running in a northerly direction and ran after him. After they had run north for some distance. the man changed his course to a northeasterly direction. Brubaker then changed his course to the northeast and kept somewhat to the east of the man he was pursuing. When the two reached a point near the north end of the twenty acre tract, and near the point where Brubaker was found lying in the road, Brubaker could not see or hear the other man and turned and started in a southwesterly direction toward the point where he had last heard him. Just

as he started in that direction a shot was fired. It seemed to him that something had exploded almost under his feet, but he did not then realize that he had been shot. Just after the shot was fired he heard the defendant say, "Go back, Elmer, or I will shoot you again." He took about two steps in the direction from which he heard the defendant's voice and another shot was fired. At the time each of the shots was fired he was moving in the direction of the defendant. He was then near the wire fence that separated his land from the road and heard the defendant climbing over or through the wire fence. He climbed over the fence to the east of where he heard the defendant in the fence. Just as he got out in the road the defendant rushed upon him from the west and struck at him with the shotgun. He grabbed at the gun and it fell to the ground. They then clinched and both fell to the ground fighting. The defendant drew his knife and cut him in the face, and he, Brubaker, then called to Varner for help. When he called to Varner the defendant arose and ran east toward his home.

The defendant, in his testimony, gave the following version:

Prior to November 13, 1909, some person had entered his house, and several times prior to that date some person had been prowling about his home at night. He made preparations to watch his premises and find out who was prowling about his place at night. About fifty feet southeast of his house he built a pen out of sticks of firewood. On the night in question, about 6:30 p. m., he secreted himself in this pen, armed with a double-barrelled shotgun, to watch for the trespasser. There was a window in the south side of his house and a lighted lamp near the window on the inside. When he had been waiting in the pen about thirty minutes he saw a man come to this window and peer through it into the house. He could distinguish the form of a man but could not recognize him. The

man backed off a few steps, crouched down, and remained in a crouching position for a short time, and then arose and walked around to the other side of the house. In a moment he returned, walked up close to the window and stood looking into the house through the window. The defendant then aimed the gun at the man's legs and fired. The man turned around two or three times as if startled and confused and then ran west toward defendant's front gate. Defendant ran to the point where the man had been standing, called to him to stop and, as he heard him still running, fired again in the direction the man had run. The defendant, carrying the gun, ran toward the gate. Just before he reached the gate the man ran against it and the defendant ran up to him and then for the first time recognized him as Brubaker. . Defendant struck at him with the gun and then dropped the gun and grappled with him. They fell to the ground and a struggle ensued with first one and then the other on top. Brubaker drew his knife and cut the defendant on the hand, after which defendant drew his own knife and began cutting at Brubaker. Defendant realized that if the fight continued he must either kill Brubaker or be killed and for that reason abandoned the conflict and ran back to his house, leaving his gun lying on the ground where it had fallen. All of this happened inside of defendant's yard. Defendant went into his house and did not go outside again until the following morning.

The wives of Brubaker and the defendant were introduced as witnesses and each testified to facts tending to corroborate her husband.

A large number of witnesses testified on each side of the case. Their testimony was chiefly as to whether the encounter took place in the defendant's yard, as claimed by defendant, or on Brubaker's land, near where he was found in the road, as claimed by Brubaker. It is sufficient for the purposes of this opinion

to say that there was considerable evidence tending to corroborate both the prosecuting witness and the defendant as to where the difficulty occurred.

The record in the case is of considerable length. We have examined it with care and, although it discloses numerous objections and exceptions saved by the defendant to the adverse rulings of the court, the case was well tried, and we have concluded that only the errors assigned in appellant's brief need be reviewed. Three errors only are assigned, the first and third of which are without substantial merit, and may be disposed of first with but brief consideration.

I.  Appellant complains that the court erred in excluding the diagram or plat offered in evidence by the defendant.

The law recognizes the value to the court and jury of plats and diagrams descriptive of the place or locality involved in the issues on trial, but to be admissible as independent evidence such plat or diagram must be shown to be accurate and correct. [Underhill on Criminal Evidence (2 Ed.) sec. 52; 17 Cyc. 412; 4 Ency. of Evidence, 641] The plat offered in evidence by the defendant in this case was proved to be so inaccurate that it would have been confusing rather than helpful to the jury, and for that reason it was properly excluded by the court.

II.  Appellant's third complaint is that "the verdict is against the evidence and is not supported by the testimony on the part of the State." This assignment involves two propositions:  (1)  that the verdict is without support under all the evidence; (2) that it is not supported by the evidence for the State.

The defendant's own testimony fully warranted the verdict of the jury, and no principle of law is better established than that if there is substantial evidence tending to prove the offense charged, the verdict will not be disturbed on appeal.  [State v. Fields, 234 Mo.

615; State v. Sharp, 233 Mo. 269; State v. Cannon, 232 Mo. 205.] It is equally well established that in determining the sufficiency of the evidence, the court is not limited to the testimony offered by the adverse party, but will consider all the evidence in the case, without regard to the party by whom it was introduced. [State v. Meagher, 49 Mo. App. 571; State v. Martin, 230 Mo. 680; State v. Lackey, 230 Mo. 707.]

III. The defendant requested an instruction on self-defense, which was refused by the court, and that ruling is assigned as error.

This complaint raises a question of serious import, in the solution of which distinguished counsel have been unable to render material aid by the citation of authorities directly in point.

Although many witnesses testified in the case, the ruling of the court now in hand must be reviewed almost entirely in the light of the facts and circumstances as testified to on the one hand by Brubaker, a witness for the State and the injured party, and on the other by the defendant as a witness on his own behalf. And, strange as it may appear, it is conceded by defendant's counsel that according to defendant's own testimony there was no right of self-defense in the case, but it is contended that the right of the defendant to an instruction on that issue necessarily arose upon the testimony of Brubaker, the prosecuting witness. This unusual condition of the testimony naturally suggests two questions: First: Is the defendant in a criminal case entitled to an instruction submitting a defense inconsistent with his own testimony and arising upon facts and circumstances expressly denied by him? Second: If so entitled, did the right of self-defense arise in this case, upon a consideration of all the evidence, so as to require the submission of that issue to the jury under a proper instruction?

Section 5231, Revised Statutes 1909, governing the procedure in the trial of criminal cases, provides in part that "whether requested or not, the court must instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict." Under this mandate of the statute, if there was substantial evidence tending to prove that the defendant acted in self-defense when he shot Brubaker, a question of law was raised upon which an instruction was clearly necessary "for the information of the jury in giving their verdict." Whether such testimony was introduced by the State or by the defendant, or in part by each, or whether it was introduced by the State and denied by the defendant, did not affect the duty of the court in the premises. When the defendant goes upon the stand as a witness, his testimony against his interest does not rise to the dignity of a judicial admission and therefore preclude him from asserting rights based upon any other competent testimony in the case. [1 Ency. of Evidence, 486; Knorpp v. Wagner, 195 Mo. 637; Montgomery v. State, 128 Wis. 183; Ephland v. Railroad, 57 Mo. App. l. c. 162.]

The rule is stated in 1 Ency. of Evidence, supra, as follows: "The testimony of a party to the suit cannot be taken as an admission, in that action, of the truth of any fact, but only as evidence, like that of any other witness in the case."

In the case of Knorpp v. Wagner, supra, this court, speaking through LAMM, J., said: "We have no doubt about the proposition that respondent and his witnesses may not agree and yet, for all that, the case be a proper one for the jury, if there be competent evidence from any witness to enable the case to go to the jury. A suitor is but a witness, after all. . . . A suitor, being but a witness, may be allowed to have the common infirmities of his kind, e. g., lapses of memory, inability to see things precisely as others do,

and may not hear or may forget things actually said or done.''

In the case of Montgomery v. State, supra, the defendant was charged with the murder of his wife. The testimony for the State tended to prove a homicide committed in the heat of passion. The defendant testified that when his wife was fatally injured he was not angry, but was perfectly cool. The defendant asked an instruction on manslaughter, upon the theory that the killing of the deceased was in the heat of passion. This instruction, based solely upon the evidence for the State, and inconsistent with the testimony of the defendant, was refused. Upon appeal the judgment was reversed and the cause remanded, the court holding that the trial court erred in refusing to give the instruction requested. Discussing the question of the right of the defendant to an instruction upon testimony in conflict with his own, the court said: "It is well established that while a party in either a civil or criminal case may not directly impeach his own witness, he may show that his testimony is not correct by other witnesses, who testify to a different state of facts. [Richards v. State, 82 Wis. 172; Collins v. Hoehle, 99 Wis. 639.] It has also been held in Massachusetts that there is no sound reason why this rule should not, if the circumstances are consistent with honesty and good faith, be applied when the party himself is the witness, nor why, under the same circumstances, he may not rely on the testimony of the witnesses of the adverse party to prove material facts denied by his own testimony. [Hill v. West End St. R. Co., 158 Mass. 458.]''

There can be no question but that self-defense is a positive, affirmative defense, but it may arise as an issue in the case upon the evidence introduced by the State. [21 Cyc. 883, and cases cited; Frazier v. Commonwealth, 114 S. W. (Ky.) 268, and cases cited; Montgomery v. State, 128 Wis. 183; Crawford v. State,

12 Ga. 149; People v. Lemperle, 94 Cal. 45; Alexander v. People, 96 Ill. 96; State v. Castle, 133 N. C. 769; State v. Moss, 77 S. C. 391; Richardson v. State, 9 Tex. App. 612; McDaniel v. State, 8 Smedes & M. 401; Head v. State, 44 Miss. 731.] And whether the issue arises from the testimony of the one side or the other, or both, a question of law is presented upon which it becomes the duty of the court to instruct the jury for their information in giving their verdict. [Sec. 5231, R. S. 1909.]

The question remains, Did the evidence tend to prove that the defendant acted in self-defense in shooting Brubaker?

Brubaker testified that on the night of the difficulty he saw a man near his house and approaching the door; that the man then walked away and got over the yard fence; that he, Brubaker, called to the man but that the latter, without making any response, quickened his pace; that Brubaker followed him and both ran in the darkness through the timber and field for a distance of over a fourth of a mile; that when about half way across the field, Brubaker, seeing that the man was running in the direction of the defendant's home, believed the man he was pursuing was the defendant Bidstrup, and that thereafter Brubaker kept to the east, so as to be between the defendant and his home; that when they were near a barbed wire fence on the north side of the field, along the public road, and near the defendant's home, Brubaker, not hearing the defendant, advanced, looking for the defendant, when a shot was fired from close to him; that the defendant then called Brubaker by name and told him not to come further or he would shoot again; that Brubaker, without speaking, continued to advance upon the defendant, when the second shot was fired; that he then heard the defendant getting through the wire fence into the public road and he also got over the fence and into the road, between the defendant and his

home, whereupon they grappled and fighting fell to the ground.

The defendant testified that when they were fighting on the ground, Brubaker cut him with a knife. It was in evidence that defendant bore ill will to Brubaker, and there was also evidence tending to prove that the ill will was mutual.

Assuming the truth of the facts and circumstances thus detailed, had the defendant reasonable cause to apprehend immediate danger of great personal injury, so as to justify shooting in self-defense?

It does not appear that the defendant was doing an unlawful act when near Brubaker's home, nor does it appear why Brubaker was pursuing him, especially after he knew that the man running from him was the defendant. The fact that when Brubaker was advancing upon the defendant he said nothing but continued to advance, even after the first shot was fired and he was warned not to come nearer, strongly indicates that he was bent upon doing the defendant bodily injury. Brubaker's subsequent conduct, in getting over the fence and closing with the defendant, after the fierce encounter in the field, together with the testimony that while fighting in the road Brubaker cut defendant with a knife, tends to prove a felonious purpose and intent of Brubaker in pursuing the defendant and in advancing upon him when the shots were fired. And we think the foregoing facts and circumstances tended to prove that when the defendant fired the shots he had reasonable cause to believe that he was in immediate danger of great personal injury.

While self-defense is a law of necessity, yet, if a person has reasonable cause to apprehend immediate danger of death or great personal injury, he has a right to use such force as appears to him to be reasonably necessary to protect himself against such impending danger. In Kelley's Criminal Law and Practice, section 519, discussing this subject, it is said: "It is

not essential, however, to this defense, that a felony was actually about to be committed or that the peril of great personal injury should be really imminent. If from the nature of the attack and attending circumstances, there is reasonable cause to believe that there is a design to commit a felony on the person, or to do some great personal injury, and also reasonable cause to believe that such design is about to be accomplished, the killing will be justified, although it should turn out that the appearances were false, and there was no design to do any serious injury, or danger that it would be done. A man has a right to act upon the appearances. He is not obliged to wait until the nature and object of the attack are fully developed, nor to look beyond the apparent means of doing harm to ascertain whether the party is capable of accomplishing the violence actually threatened and about to fall upon him, as he may honestly and reasonably believe."

Whether the defendant had reasonable cause to apprehend immediate danger of death or great personal injury, was a question for the jury. It was not the province of the court to determine the facts from the testimony of these two witnesses, so diametrically opposed and so conflicting, upon the most material facts in issue. It was the duty of the court to instruct the jury, upon the assumption of the truth of the testimony for the State as well as the testimony for the defendant, leaving it to the jury to find the facts and determine the guilt or innocence of the defendant under proper instructions applicable to every phase of the testimony before them.

We are of the opinion that the court erred in failing to give an instruction to the jury, submitting the issue of self-defense, and for that reason the judgment is reversed and the cause remanded. *Ferriss* and *Brown*, *JJ.*, concur.