STATE of Missouri, Respondent,

v.

Kenneth (Bob) BAKER, Appellant.

No. 44484.

Supreme Court of Missouri.

Division No. 1.

April 11, 1955.

Joseph N. Miniace, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Appellant, Kenneth Baker, hereafter referred to as the defendant, was found guilty of the murder, in the second degree, of Jesse Leroy Miller, and his punishment assessed by the jury at imprisonment in the penitentiary for 25 years. From the ensuing judgment and sentence he has appealed.

It is admitted that Miller died on June 12, 1953, immediately after being struck by a bullet from a gun in the hands of the defendant. The incident occurred in Spring Lake Tavern which is located on Highway 51 in Bollinger County. The defendant had operated this tavern for several weeks prior to the shooting.

On the occasion in question Miller and seven of his friends met at defendant's roadhouse. They put two tables together and were having a good time drinking 3.2 beer, talking and dancing. One of the witnesses expressed the opinion Miller was drunk. A number of others denied that he was in that condition.

Seated at the bar was a customer, Truman Barks. It appears that on two occasions he and the deceased had had a discussion about fighting. Each inquired of the other as to whether he would like to fight. No fight occurred. Barks testified that he and Miller were good friends and that this was just good-natured banter between them.

Shortly before the shooting, Miller and one Lee Albert Cureton walked over to the juke box and stood there talking for some time. Defendant came out of the

kitchen and noticed that several of his regular customers had left. He seemed to attribute this to the noise and confusion caused by Miller and others in his group. It is evident that defendant decided to cause the deceased and perhaps others in the party to leave the tavern. He obtained his gun and went to a point near Miller. According to the version of most of the witnesses, defendant pointed the gun at Miller and ordered that he get out, and then in just a few seconds the gun was discharged and Miller fell. The bullet entered the left side of his back and came out in his right chest. It then struck Cureton and he was wounded to some extent. The gun was held close enough to cause powder burns on the body of deceased. The witnesses for the State testified that deceased did not move between the time defendant approached him and the discharge of the gun.

Defendant testified that after he told Miller to leave, deceased took four steps toward him and then leaned on the juke box with his right hand on his hip pocket. Defendant said he then glanced at Cureton and when he again looked at Miller he was right on him. His testimony is not entirely clear as to how the gun happened to discharge, but it appears that he was pulling the hammer back and it slipped and caused the gun to fire. Defendant definitely stated that he did not intend to shoot Miller and did not knowingly and intentionally pull the trigger of the gun. He testified in one instance that the gun had a "hair trigger," indicating that it could be easily fired, but on cross-examination stated, "I did not pull the trigger because you had to pull the trigger hard to make it fire." In this connection, it should be noted that two experts testified that a gun of the type used by defendant could not be fired without pulling the trigger.

Immediately after the shooting, defendant was asked why he did it and he replied that it was an accident. He then pointed the gun at the others present and ordered all of them to leave. One of the men told defendant that he had better leave the country because Miller's friends and broth-ers would kill him. About 20 minutes later defendant left, and the next day was arrested in Lincoln, Illinois, and brought back to Bollinger County. He stated that he had thrown the gun out of the car while driving along the highway. A search was made at the place indicated by defendant but the gun was never found.

Defendant further testified that he was shell shocked in World War II and had been nervous ever since. He also stated that he did not drive to Illinois to avoid arrest, but because he feared he would be killed—apparently by friends or relatives of the deceased. Shortly after his arrest, defendant went to the tavern in the custody of the officers and re-enacted the occurrence. At that time, he stated that he cocked the gun and pointed it at Miller but that it went off accidentally. A little later, he stated again to Sergeant Little of the Patrol that after he cocked the gun the hammer accidentally slipped from under his thumb and caused the discharge of the weapon.

 At the outset, defendant contends that the court erred in its failure to give an instruction on self-defense even though such was not requested. No such instruction was required unless there was substantial evidence upon which it could be based. To satisfy this requirement, defendant points to his own testimony to the effect that Miller, after being ordered to leave, advanced toward him with his hand upon his hip pocket. We have concluded that this evidence was not sufficient to require the giving of an instruction on self-defense.

 It will be recalled that defendant positively testified that the shooting was accidental. The defenses of self-defense and accident are inconsistent. If proved by proper evidence, a defendant is entitled to have inconsistent defenses submitted to the jury. State v. Morris, Mo., 248 S.W. 2d 847; State v. Wright, 352 Mo. 66, 175 S.W.2d 866. The rule in this state is that the testimony of a defendant against interest does not rise to the dignity of a con-

clusive judicial admission and hence, if justified by other evidence, he is entitled to an instruction on self-defense even though inconsistent with his own testimony. State v. Bidstrup, 237 Mo. 273, 140 S.W. 904. However, the evidence to justify the instruction on the inconsistent defense must be offered by the State or proved by third party witnesses for the defendant. State v. Wright, supra. In the instant case, defendant relies upon his own testimony as a basis for the inconsistent defenses. This cannot be permitted. His positive testimony that the shooting was accidental and unintentional would clearly negative any possible inference of self-defense based upon other facts appearing in his testimony. In this situation, it follows that there was no substantial evidence upon which a self-defense instruction could have been based.

Defendant next asserts that the court should have given an instruction on the right of imperfect self-defense. What we have said in disposing of the preceding point applies with equal force to this contention. There was no substantial evidence upon which to base an instruction on that issue.

■ Next the defendant argues that the court erred in refusing to give the instruction he offered on manslaughter. It provided that if the jury found that defendant intentionally shot and killed said Miller but without malice or premeditation, then he should be found guilty of manslaughter. This would not likely be a proper instruction in any case and it certainly had no place in the instant case. If he *intentionally* shot Miller under the circumstances detailed by the witnesses for the State, he was guilty of murder. In harmony with the testimony of defendant, the court gave an instruction which directed a conviction for manslaughter if the jury found the shooting was not intentionally done by defendant but resulted from culpable negligence in the handling of the gun in a careless and reckless manner with disregard for human life. The court also gave an instruction directing that the jury acquit the defendant if the gun was accidentally discharged while defendant was using reasonable force to prevent a breach of the peace by expelling the deceased from the premises (unless recklessly done as defined in a preceding instruction). These instructions were proper and clearly presented the issues relating to manslaughter and accidental shooting.

■ Complaint is also made of the refusal of Instruction No. 9 offered by defendant. This instruction provided that defendant was not required to prove that the shooting was an accident but that the burden was on the State to prove that it was not an accident and was intentionally done and, unless such proof was made, the jury should acquit defendant of murder in the first degree, second degree and manslaughter. This instruction was properly refused. It was inconsistent with the instruction which permitted a conviction for manslaughter if the shooting was a result of culpable negligence even though not intentionally done. Moreover, the court gave an instruction on burden of proof which fully advised the jury of the burden which the law casts upon the State in a criminal case. It should also be remembered that the court gave an instruction on accidental homicide in accordance with defendant's evidence.

Defendant further contends that the instruction on first degree murder was erroneous because it did not refer to the defense of self-defense. In disposing of the first point briefed, we held that defendant was not entitled to a submission of that defense. What we said there disposes of the instant contention.

■ Complaint is also made that Instruction No. 2 submitted the essential elements of murder in the second degree and directed a verdict of guilty upon a finding of those elements without any reference to the defense of accident. We note that this instruction required a finding that defendant shot Miller "wilfully, premeditatedly and with malice aforethought." Malice is defined, in part, in the instructions as "that condition of mind which

prompts a person to intentionally take the life of another without just cause * * *." It therefore appears clear that the terms used in the instruction would negative the theory of accident. If the jury entertained the view that the shooting was accidental, it could not have found that defendant wilfully and intentionally shot Miller as required by the instruction in order to convict. There was another instruction covering the defense of accident and all instructions must be read and considered together. We have concluded that the jury could not have been misled by the omission from the instruction of a proviso mentioning the defense of accident. State v. Murphy, 338 Mo. 291, 90 S.W.2d 103; State v. Sapp, 356 Mo. 705, 203 S.W. 2d 425; State v. Hannon, Mo., 204 S.W.2d 915.

█ It is further urged by defendant that error was committed in permitting the prosecuting attorney to cross-examine defendant as to matters beyond the scope of the direct examination. This refers to an inquiry into an incident at the tavern five days prior to the shooting when defendant threatened four men with this gun. Without objection, the prosecuting attorney inquired into the matter fully. After twelve questions concerning the occurrence had been asked and answered, the defendant interposed an objection to the next question, which the court sustained. The court was not requested to take any other action. Since there was no ruling of the court adverse to defendant, it is obvious that he is in no position to complain of the matter in this court.

█ The prosecuting attorney, in his closing argument, in referring to his cross-examination of defendant, said, "I am certainly glad that Bob Baker did not have a gun this afternoon when I asked questions of him. I don't have any idea what he would have done." Defendant claims that this was prejudicial. The cases he cites are not in point as they all refer to expressions of opinion by the prosecuting attorney as to the guilt of defendant. The most damaging implication that might be drawn from the statement is that defend-

ant's actions on the witness stand indicated that he was a man of violence and high temper. However, we need not decide as to the prejudicial effect, if any, of the argument, as defendant made no objection to it and hence is in no position to complain of it upon this appeal.

Finally, defendant argues that he is entitled to a new trial because juror Moore separated from the other jurors on two occasions during the trial and before submission of the cause to the jury. The jury had sleeping quarters on the second floor of the Audubon Hotel in Ste. Genevieve. During the evening following the first day of the trial, the jurors played cards in the hotel annex on the first floor. Shortly after the evening meal, juror Moore complained to the sheriff that his feet hurt and he was permitted to go to his room and retire.

The other incident occurred the next morning. The jurors were assembled around the water fountain on the first floor of the courthouse getting a drink. Mr. Moore again complained to the sheriff that his feet and ankles hurt and he was permitted to go on up to the courtroom and take his seat in the jury box. He was only a few minutes ahead of the remainder of the jury.

█ It is well settled that if the separation takes place *before* submission, a new trial should be granted, unless it is affirmatively shown that the jurors were not subjected to improper influences during the separation, to the prejudice of defendant. The burden rests upon the State to so prove. This court has held that a reasonable rule must be adopted in deciding this question and that some measure of discretion is properly vested in the trial court in the determination of the issue, as it heard the evidence and observed the trial proceedings. The ruling of the trial court will not be disturbed unless there appears to have been an abuse of that discretion. State v. Bayless, 362 Mo. 109, 240 S.W.2d 114.

█ We have concluded that the evidence justified the trial court in ruling that

juror Moore was not subjected to any improper influence on the two occasions heretofore described. It appears from the affidavit of Mr. Moore that on the night he retired early, he locked the door to his room and it remained locked until the jury was about to assemble the next morning. He saw no one during the night. On the occasion when he went to the jury box shortly in advance of the others, it appears that he talked to Mr. Roth, the city marshal, and asked him to call his son and tell him that he had the keys to the car. About this time, the court reporter and the attorney for defendant came into the room and the juror asked the attorney how much longer the trial would go on. These conversations would not appear to have had any improper influence upon the juror.

An examination of the record discloses no error. We have concluded that the defendant was afforded a fair trial and that the judgment should be affirmed. It is so ordered.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.