**STATE of Missouri, Respondent,**

v.

**James PEAL, Jr., Appellant.**

**No. 54806.**

Supreme Court of Missouri,
Division No. 2.

March 8, 1971.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Daniel V. O'Brien, St. Louis, for appellant.

MORGAN, Judge.

Charged as a second offender, defendant was tried to a jury and found guilty of murder, second degree. The court assessed punishment at ten years confinement. Section 556.280, V.A.M.S.

Three assignments of error are made against the trial court. They are: (1) Refusing to give an instruction on self-defense, (2) Refusing to give an instruction on the bad character of the deceased, and (3) Giving an accident instruction that did not place on the state the burden of proving the homicide was not accidental.

On the evening of October 11, 1968, several friends gathered at the home of (Miss) Sally Simmons who was the mother of seven children. The friends were: Margaret Newton; Margaret's brother, Henry Stewart, and his wife Earline; and the deceased, Albert Simmons, who was the father of one child but had been separated from Sally for approximately five years. All were drinking beer, gin or bourbon. Soon thereafter the defendant arrived. Presumably, he was the father of two of the children but had ceased living with Sally prior to the evening in question. Defendant and Sally went into the kitchen and talked. Defendant then left the house and returned in about fifteen minutes. Again, he and Sally walked into the kitchen. When they returned to the living room, defendant offered and the deceased accepted a drink from a bottle of gin. After some conversation relative to the children, defendant stood in the doorway and pulled a gun from his belt. When it fired, the bullet struck deceased in the heart causing death. Defendant ran from the house, drove off, and some distance away threw away the gun. The next day, accompanied by self-employed counsel, he appeared at the police station.

As noted, an accident instruction was given but defendant contends he also was entitled to a self-defense instruction. This contention is consistent with defendant's effort at trial to establish both defenses. For instance, after saying deceased was sitting on a stool during their conversation, defendant testified: "Mr. Simmons [deceased], he came up real fast and I thought he had something in his hand. I had a gun. I pulled the gun to scare him off. Miss Simmons [Sally] grabbed my hand and the gun discharged." He also was asked, "Had you intended to shoot Mr. Simmons?" His answer was: "Not at all. Up until the moment the shot was fired, me and Mr. Simmons was strictly friends all the way." While detailing how nervous he

was while in jail, defendant explained: "This was emotion for my friend that I had killed accidentally."

Even if defendant's self-serving statements were to be ignored, his testimony that the gun was discharged accidentally when Sally struck at it entitled him to an accident instruction. Since such an instruction was given, we are now concerned only with his complaint that the trial court refused to give an additional self-defense instruction. In this connection, it is not necessary to extend this opinion by detailing such of defendant's testimony as he claims established his right to the instruction. We will assume for the moment that it did. However, by the established law of this state, a defendant alone can not provide the basis for such inconsistent defenses. Either instruction relates to an explanation of the homicide, but they are totally inconsistent. If the shot was fired in self-defense, it required the voluntary act of defendant; conversely, if the shot was accidental it was involuntary. This is not to say, however, that both defenses may not be submitted to a jury under certain circumstances. For example, if a defendant by his own testimony provides the basis for an accident instruction, it must be given; but if to the contrary, testimony of others shows defendant acted in self-defense, he also is entitled to a self-defense instruction. Obviously, the converse would be true. Under comparable facts, the identical argument was considered in State v. Baker, Mo., 277 S.W.2d 627, and the court held, loc. cit. 629–630: "It will be recalled that defendant positively testified that the shooting was accidental. The defenses of self-defense and accident are inconsistent. If proved by proper evidence, a defendant is entitled to have inconsistent defenses submitted to the jury. State v. Morris, Mo., 248 S.W.2d 847; State v. Wright, 352 Mo. 66, 175 S.W.2d 866. The rule in this state is that the testimony of a defendant against interest does not rise to the dignity of a conclusive judicial admission and hence, if justified by other evidence, he is entitled to an instruction on self-defense even though inconsistent with his own testimony. State v. Bidstrup, 237 Mo. 273, 140 S.W. 904. However, the evidence to justify the instruction on the inconsistent defense must be offered by the State or proved by third party witnesses for the defendant. State v. Wright, supra. In the instant case, defendant relies upon his own testimony as a basis for the inconsistent defenses. This cannot be permitted. His positive testimony that the shooting was accidental and unintentional would clearly negative any possible inference of self-defense based upon other facts appearing in his testimony. In this situation, it follows that there was no substantial evidence upon which a self-defense instruction could have been based." See State v. Malone, Mo., 301 S.W.2d 750, 759; State v. Hale, Mo., 371 S.W.2d 249, 258; as well as State v. Wright, 352 Mo. 66, 175 S.W.2d 866, wherein the state offered in evidence defendant's prior extrajudicial statement that was inconsistent with his testimony at trial.

Nevertheless, defendant contends, "There was evidence in this case that the Defendant when pulling the gun from his belt was acting in self-defense." Such an attempt to avoid the logic of the law by contending there was an "accidental shooting of self-defense" has been rejected by this court. The suggested approach would require a combination of two diametrically opposite theories, and " * * * the law does not recognize the anomalous doctrine of accidental self-defense." State v. Whitchurch, 339 Mo. 116, 96 S.W.2d 30, 35.

Next, we look to see if the testimony of other witnesses provided a basis for submitting self-defense. Henry Stewart testified that when he returned from upstairs defendant and deceased were having a discussion and deceased was standing by the stool; that Sally said there was no need to argue as she was the one working and taking care of the children; that neither appeared angry; that deceased never moved nor took any steps toward defendant or made any gestures; that defendant stood in the doorway and said, "I know how I can

stop this shit" and pulled the gun; that he saw defendant and Sally scuffling a little bit and the gun fired. Sally testified that she and defendant had talked of going back together; that she observed the gun in defendant's belt; that deceased and defendant were not angry; that she tried to grab the gun but didn't think she touched it; that she had her back to deceased when he was shot. Margaret Newton, Sally's sister, testified that during the discussion the deceased stood up and said he didn't understand what defendant was talking about; that he removed his hat and sunglasses; that he never reached in his pocket nor moved toward defendant; that defendant said, "I know how to stop this"; that "Sally grabbed at James [defendant] and he held her back like this with his arm." Earline testified that from her position she could not see defendant but watched deceased; that he never moved toward defendant; that he did not ·put his hand in his pocket nor make any threats toward defendant. With such testimony, it follows that there was no substantial evidence upon which a self-defense instruction could have been based.

■ Since self-defense was not an issue in the case, it was not error to refuse an instruction bearing on the character of the deceased. His character was not material or relevant where the defense was accident. State v. Woods, 274 Mo. 610, 204 S.W. 21.

■ Relative to defendant's third point which is directed toward the accident instruction, we observe that it has not been preserved for review. In the motion for new trial it was alleged " * * * that the Court committed error in the giving of all instructions offered by the State * * *." As said in State v. Pope, Mo., 364 S.W.2d 564, 567: "Missouri has long followed the precepts of our § 547.030 and of Criminal Rule 27.20 requiring that the grounds assigned for the granting of a new trial shall be stated 'in detail and with particularity.' Our cases have uniformly construed this to

mean, as applied to the giving and refusal of criminal instructions, that the assignment must point out the *reason* why the action was erroneous." Nevertheless, we have considered the point and find it without merit. State v. Hill, Mo., 438 S.W.2d 244; State v. Cutshall, Mo., 430 S.W.2d 173.

The judgment is affirmed.

All of the Judges concur.