**STATE of Missouri, Respondent,**

v.

**Simon NERIA, Appellant.**

**No. KCD 27149.**

Missouri Court of Appeals,
Kansas City District.

Aug. 4, 1975.

Willard B. Bunch, Public Defender, Philip H. Schwarz, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special JJ.

ROBERT R. WELBORN, Special Judge.

Charged with murder in the first degree, Simon Neria was found guilty of manslaughter by a jury in the Jackson County Circuit Court, which fixed the punishment at ten years' imprisonment. This appeal is from the ensuing sentence and judgment.

A short time before midnight on July 3, 1973, Ray Cameron was killed by a blast from a 20 gauge shotgun discharged by Neria in Neria's home in Kansas City. One question on this appeal is whether or not the trial court erred in failing to instruct on self-defense. Therefore, the evidence bearing on that question is of significance.

Gertha Mae Wyatt, who had lived with Neria for eight years, testified in the state's case. She testified that Cameron lived in the neighborhood and had visited their residence on numerous occasions, sometimes in Neria's absence. She said that Cameron had the reputation in the neighborhood of being a violent person and a killer and that he had "bullied" Neria on other occasions. On July 3, 1973, Cameron came to her residence, carrying a six-pack of beer. Neria arrived from work a short time later, at around 11:00 P.M. According to Ms. Wyatt, when Neria saw Cameron, he was not "gladly overly" and Neria told Cameron to leave. Cameron said he wasn't going and Neria again asked him to leave. Cameron told him, "If you want me out, well, you put me out of your house." Cameron got out of his chair and walked toward Neria with his right hand in his pocket. Neria stepped into a bedroom just off the living room, got a shotgun and when Cameron continued to walk toward him, Neria fired the gun, fatally woulding Cameron.

Ms. Wyatt called the police who arrived shortly. Ms. Wyatt told the investigating officers: "He wouldn't leave and Simon shot him." Neria said: "I asked him to leave and he wouldn't; and then he started messing with my wife, and he said, 'No; I ain't going to get out of here.'"

Ms. Wyatt saw no weapon in either of Cameron's hands. No weapon was found on his body. He did not strike Neria.

Neria testified in his own behalf. His version of the occurrence differed widely from that of Ms. Wyatt. According to Neria, he had been home since around nine o'clock and Cameron had come into the house around that time. He had conversed with Cameron for some time and Cameron took offense when Neria indicated he wanted Cameron to leave. Neria testified:

"A. So I told him—I was trying to do—get him out or move him out or something, understand, that I got to go to sleep, I got to go somewhere. So I told him we might go to Swope Park or somewhere, Swope Park or somewhere. I might take this gun, you know what I mean; I might see a squirrel somewhere up there, or a rabbit or something; going out of the city limits. So he say, he turn around and say, 'You better put that damn thing before I take it away from you and wrap it around your neck.' So I kind of—I mean he kind of stand up like that (indicating), back in here, kind of back like this (indicating) and I hit the damn—the gun hit the damn divan like that and the damn thing went off and hit the man in the head; the bullet hit him in the head."

The trial court instructed on murder in the first degree, second degree, and manslaughter. An instruction on excusable homicide was given, but the court refused to instruct on justifiable homicide. Such refusal is the basis for appellant's claim of error.

■ The state does not question the proposition that if the state's evidence was sufficient to raise the issue of self-defense, the fact that the defendant's own version of the occurrence was contrary to the state's evidence does not avoid the duty of the trial court to instruct on self-defense. *State v. Bidstrup,* 237 Mo. 273, 140 S.W. 904, 907–908[4] (1911); *State v. Boyd,* 498 S.W.2d 532, 534[2, 3] (Mo.1973). Nor is the problem of inconsistent defenses here involved, inasmuch as the evidence of self-defense, if any, came from the state's witness and the evidence of accident, on which the court instructed, from the defendant's testimony. *State v. Wright,* 352 Mo. 66, 175 S.W.2d 866, 872[8] (banc 1943); *State v. Randolph,* 496 S.W.2d 257, 262[5], [6] (Mo. banc 1973).

The state's position is that there was insufficient evidence, when viewed in the light most favorable to the defense, to raise a jury issue as to whether the defense had been excluded beyond a reasonable doubt.

Appellant states the evidence which he claims raised the issue as follows:

"In the case at bar, there was evidence that Appellant acted in self-defense, which

came from the lips of witness [Gertha Wyatt] called by the State in their case in chief. She stated that the victim challenged the Appellant to put him out of his house, that when the victim was shot, he was walking toward the Appellant with his hand in his pocket. That the victim had a reputation in the nieghborhood of being a killer, and that the Appellant did not get the gun until the victim told him that he was not going to leave and was walking toward the Appellant."

Appellant has cited no case involving reasonably similar facts in which it has been held that such facts and circumstances give rise to an issue of self-defense. The state cites *State v. Baker*, 277 S.W.2d 627 (Mo. 1955) as holding that a somewhat similar set of facts involving the testimony of the defendant that deceased who, upon being ordered by the defendant to leave at once, advanced toward the defendant with his hand in a hip pocket, did not require the giving of a self-defense instruction. However, the basic holding of Baker appears to be that the defendant, who also testified to an unintentional, accidental shooting, could not by his own testimony also create the necessity for a self-defense instruction. 277 S.W.2d 629–630[3–5]. The state also cites *State v. Young*, 510 S.W.2d 732 (Mo.App. 1974) as in point. In that case the defendant relied upon threats of the deceased, his knowledge of the deceased's reputation as a killer and the fact that when he turned around on a public street, he saw the deceased following him and shot him although the defendant had made no threatening gestures or acts at the time. The court held that the mere fear on the part of the defendant was not sufficient to require a self-defense instruction in the absence of real or apparently real necessity. 510 S.W.2d 735. Here, there was evidence of some threatened action on the part of the deceased directed toward the defendant at the time of the occurrence.

The question here is whether or not, from the evidence, the jury might conclude that the appearances which confronted the de-fendant reasonably caused him to believe that Cameron was about to kill him or do him great bodily harm and that such danger was imminent and that the appellant believed that it was necessary for him to act as he did to protect himself from such danger. MAI–CR 2.40.

■ Because the appellant's version of the affair is so different from that of the state's witness, there is no direct evidence of appellant's state of mind which would support the giving of an instruction on self-defense. In fact the only direct evidence on this subject from the appellant himself refutes any theory of action in self-defense, but appellant's inconsistent testimony does not foreclose the duty to instruct on the question. *State v. Bidstrup, supra,* 140 S.W. 907[4].

■ The only circumstance tending to support a finding of appellant's belief of an impending deadly assault was that the deceased advanced toward the appellant with his hand in his right pocket. No weapon was ever displayed. The deceased made no threat either to kill or injure appellant. There was no evidence that appellant was aware of the deceased's claimed reputation as a "killer." The evidence is unclear as to how far the deceased was from the appellant when the appellant fired. There was no evidence, however, that appellant sought to avoid his drastic act by warning the deceased. Inasmuch as he was in his own home, appellant was not under an obligation to retreat (see *State v. Brookshire,* 353 S.W.2d 681, 691–693[24], [25] (Mo.1962)). However, the question is one of self-defense, not defense of habitation (*State v. Brookshire, supra*) and appellant was permitted to use deadly force only if the appearances justified a fear of deadly attack upon himself.

■ In the absence of evidence of a threat by the deceased against the appellant or of the display of some means of inflicting death or serious bodily injury on appellant, there was no appearance here,

under the state's evidence, which would reasonably justify defendant's fears other than of a simple assault, at the most. The trial court was, therefore, not required to instruct on self-defense. *State v. Parker,* 403 S.W.2d 623, 627[4] (Mo.1966); *State v. Jackson,* 511 S.W.2d 771, 776–777[10] (Mo. 1974). Appellant's assignment of error on this ground is without merit.

Appellant's second assignment of error is based upon the refusal of the trial court to permit Marcus Collins to testify as a witness for the defendant.

Before the noon recess on the second day of the trial, the first defense witness, Mr. Stanley Yukon, defendant's employer, had testified to the defendant's good reputation for truth and peaceful habits. When court reconvened following the noon recess, the court observed that Marcus Collins, whom defendant had proposed to call as his next witness, had been present during the morning proceedings in violation of the rule excluding witnesses which had been invoked at the request of the defendant. A hearing outside the presence of the jury confirmed that Collins had been in the courtroom. It also developed that defense counsel had been in touch with Collins by telephone sometime previously but had not interviewed him personally and was unaware of his presence until after the noon recess when Collins asked counsel if he could testify. Counsel stated that he expected to elicit testimony from the witness as to conduct of the decedent directed toward the defendant and as to the general reputation of defendant and the deceased. In the course of the interrogation, Collins stated that he used to live across the hall from appellant and Collins volunteered: "The boy used to bulldoze him; I know that to be a fact."

The trial court concluded that the testimony of Collins would be "substantially cumulative." The state's objection to testimony of the witness was sustained. The trial court stated that it was "satisfied" that defense counsel "may not have been aware of Mr. Collins' presence here in the courtroom. I'm not inferring that you were aware of it and permitted him to remain after you asked the rule to be enforced."

■ Having found that the prospective witness had violated the rule without the connivance of the defense attorney, the trial court's disqualification of the witness was, under the most recent pronouncement of the Supreme Court on this question in *State v. Shay,* 339 S.W.2d 799 (Mo.1960), erroneous. However, in view of the further conclusion that the testimony of the witness would have been cumulative, the error was harmless. *State v. Nieuhaus,* 217 Mo. 332, 117 S.W. 73, 80 (1909). In addition there was no clear offer of proof as to what the witness's testimony might be. As above noted, the witness did volunteer that he knew that the victim "bulldozed" appellant. That is not evidence of prior acts of violence against appellant, such as might have been admissible in support of a claim of self-defense.

Under all of the circumstances, the ruling of the trial court was at the most harmless error, and affords no grounds for reversal of the judgment.

Judgment affirmed.

All concur.