**STATE of Missouri, Plaintiff-Respondent,**

v.

**Richard Glen HARKINS,
Defendant-Appellant.**

**No. 35934.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

Jan. 20, 1976.

Motion for Rehearing or Transfer
Denied April 13, 1976.

James W. Whitney, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Charles B. Blackmar, Spec. Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

Richard Glen Harkins was convicted of murder in the second degree and sentenced to life imprisonment. His sole point on appeal is that "[t]he trial court erred in failing to instruct the jury on the issue of self-defense because there was substantial evidence in support thereof."

On a public street in the City of St. Louis at about 2:45 a. m. on June 16, 1972 Michael Short was shot and killed by a shotgun blast. Returning home after a work shift Michael parked on the north side of the street, across from his house, and walked to the south curb. There he was confronted

by appellant, who had a shotgun in his hand. Appellant had borrowed the shotgun from a friend the day before and had driven to Michael's house where, for several hours, he visited with Michael's wife Dorothy. Appellant wanted Dorothy to leave Michael and live with him. She refused unless she had a divorce. On previous occasions Dorothy had told appellant that she would not leave Michael until he was eliminated or done away with. Knowing that Michael would return from work shortly, appellant retrieved the shotgun from his car, returned to the house and in Dorothy's presence put together and loaded the weapon.

Appellant testified as follows: He wanted to scare Michael with the gun. He did not intend to kill him. For from 5 to 15 minutes appellant sat on the front porch, lying in wait with the loaded shotgun. Michael arrived in his car and parked it. Before Michael crossed the street appellant pulled the hammer back on the shotgun. Michael had no weapon "or anything" in his possession. Appellant held the shotgun with his hand off the trigger and around the stock and the forearm of the barrel. Appellant told Michael he wanted to talk to him about Dorothy; that she wanted a divorce and wanted to leave with appellant. Michael stood there for a second, muttered something unintelligible, then suddenly lunged forward, swung, kicked, hit appellant on the chin, knocked him down, and knocked the shotgun out of his hand. The shotgun fell onto the ground. Michael had appellant down on the ground and was on top of appellant, hitting him in the head and chest. During this fight appellant was striking Michael. All of a sudden Michael noticed the shotgun, which was lying in the grass, whereupon Michael got up off appellant, grabbed the shotgun by the barrel and started to turn it around on appellant to get the shotgun in position to fire. Appellant, by that time up off the ground and standing in front of Michael, kicked Michael in the chest. Michael fell down. As Michael went down he let go of the shotgun, or threw it, and when the butt hit the ground or pavement it went off and shot Michael.

At no time, either in court or during the making of two videotaped statements, did appellant ever state or claim that he intentionally shot Michael.

The State's theory was that appellant lay in wait for Michael, and when Michael approached him appellant pointed the shotgun at Michael, pulled the trigger and killed Michael in cold blood, without any struggle. The State introduced medical evidence that the shot entered the forehead of Michael "straight on"—his head perpendicular to the muzzle of the weapon—deflecting neither upward or downward—a direct shot into the forehead. Appellant is 5 feet 9 inches in height. Michael was 5 feet 8 inches tall. There were no powder burns on Michael's face or body. To get powder burns the person struck must be within 15–18 inches of the end of the shotgun barrel; at two feet there would be no powder burns if a shot were fired. A detective of the police firearms identification section testified that the shotgun had a built-in facility to prevent accidental discharge; that the hammer will not travel far enough to engage the firing pin unless the trigger is pulled, and that it takes 7 pounds pressure on the trigger to fire the weapon.

There were no third-party witnesses to the events leading up to this homicide.

Appellant's evidence shows that the shooting resulted from an accidental discharge of the shotgun as it fell from Michael's hand to the pavement. Appellant did not testify that the shotgun was discharged by reason of his intentional act. At no time at or before trial did appellant claim he shot Michael intentionally. The only defense finding support in the evidence (that of excusable homicide by accident) was instructed upon. No self-defense instruction was given. Under the evidence the court did not err in failing to give a self-defense instruction.

■ "The defenses of self-defense and accident are inconsistent, and the 'defendant alone may not provide the basis for submitting such inconsistent defenses to the jury.' *State v. Randolph,* 496 S.W.2d 257

(Mo. banc 1973). If the [shot was] fired in self-defense, the firing resulted from the voluntary act of appellant; if the [shot was] accidental the act was involuntary. *State v. Peal,* 463 S.W.2d 840 (Mo.1971). Under certain limited circumstances a defendant may be entitled to both submissions. 'For example, if a defendant by his own testimony provides the basis for an accident instruction, it must be given; but if to the contrary, testimony of others shows defendant acted in self-defense, he also is entitled to a self-defense instruction.' *State v. Peal,* supra." *State v. Walker,* 525 S.W.2d 826, 828[1] (Mo.App.1975). Other cases holding that instructions on both self-defense and accident must be given when evidence supporting the inconsistent defenses is offered by the State or by third party witnesses for the defendant include *State v. Brown,* 502 S.W.2d 295, 298 (Mo.1973), cert. den. 416 U.S. 973, 94 S.Ct. 1999, 40 L.Ed.2d 562 (1974); *State v. Randolph,* supra; *State v. Baker,* 277 S.W.2d 627, 630 (Mo.1955), and *State v. Wright,* 352 Mo. 66, 175 S.W.2d 866, 871 (1943). There was no evidence from any source supporting the inconsistent defenses of accident and self-defense. The State did not offer evidence that appellant fired the shotgun in self-defense; the State's theory was that of cold-blooded murder without provocation. Appellant did not testify that he shot Michael in self-defense. No other person testified to facts showing that appellant fired the shotgun in self-defense. Accordingly, appellant was not entitled to a self-defense instruction.

Judgment affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.