**STATE of Missouri, Plaintiff-Respondent,**

v.

**Jackie SHERRILL, Defendant-Appellant.**

**No. 9425.**

Missouri Court of Appeals, Springfield District.

June 5, 1973.

John C. Danforth, Atty. Gen., Daniel P. Card II, Assistant Atty. Gen., Jefferson City, for plaintiff-respondent.

Dorman L. Steelman, Salem, Morton K. Lange, Cuba, for defendant-appellant.

BILLINGS, Judge.

Jackie Sherrill was convicted by a jury of the second degree murder of George Oliver Wilkerson and his punishment fixed at twenty-five years imprisonment. Wilkerson was fatally shot while in his station wagon in front of the 49 Club, a beer tavern, in Iron County on the night of July 9, 1971. We affirm.

The defendant and two brothers, John Mills and Tom Mills, were jointly charged with the first degree murder of Wilkerson. Defendant's motions for a severance and change of venue were granted and his trial followed in Crawford County.

Because of defendant's challenge to the sufficiency of the evidence to support the charge and jury verdict against him it is necessary to detail the evidence relied upon by the state. However, in testing the sufficiency of the evidence the facts and evidence and favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. State v. Strong, 484 S.W.2d 657 (Mo. 1972); State v. McClinton, 418 S.W.2d 55 (Mo.1967); State v. Burrage, 418 S.W.2d 101 (Mo.1967). And the scope of our review extends only to a determination of whether there is sufficient substantial evidence to support the verdict. It is not our function or prerogative to weigh the evidence to determine whether the charge has been proven beyond a reasonable doubt; that is a function of the jury. State v. Strong, supra; State v. Crawley, 478 S.

W.2d 344 (Mo.1972); State v. Odom, 353 S.W.2d 708 (Mo.1962). With the foregoing principles in mind, the jury could reasonably find the facts giving rise to Wilkerson's death to be as hereinafter outlined.

Wilkerson, from St. Louis, was a comparative stranger to the locale and arrived at the 49 Club in the early evening of the night in question. He was driving a 1960 Ford station wagon and in this vehicle was a .22 caliber Mossberg rifle.

Inside the tavern Wilkerson and John Mills engaged in a game of pool and an argument ensued over the results of a wager between them. This was apparently resolved by a tavern employee instructing Wilkerson to pay John Mills, which Wilkerson proceeded to do. About this time defendant and Tom Mills entered the tavern whereupon John Mills "got a little loud". The employee then asked Wilkerson to leave. As Wilkerson walked out the door the defendant said "Get that son-of-a-bitch.". The Mills brothers immediately went out the door after Wilkerson. Defendant went to the doorway, began throwing beer bottles at Wilkerson and called out that "there were some guns in the front seat of the car."

The area in front of the tavern was illuminated by a light. Tom Mills began firing a pistol at Wilkerson, John Mills was throwing large rocks at him, and defendant continued to hurl beer bottles. Wilkerson was near his station wagon and obtained the rifle and began firing it in the direction where the Mills brothers were located. During a lull in the battle Wilkerson got in the station wagon with the rifle, started the motor, and started backing it away from where it had been parked. The station wagon's movement was halted by a vehicle parked behind it and when a slight collision occurred the station wagon stopped.

The Mills brothers ran to the driver's side of the station wagon and grabbed and began striking Wilkerson with their fists.

Defendant left the doorway of the tavern and ran to the opposite side of the station wagon. He threw a beer bottle through the open front window and then "he reached in the car and got the rifle" and "stuck it right back in the car [station wagon]" and fired the rifle. Defendant withdrew the rifle, wiped it off, and laid it in the back seat.

Wilkerson was then pulled from beneath the steering wheel of the station wagon by the Mills brothers who proceeded to kick and stomp him as he lay on the ground. His death was due to a bullet from the rifle which entered his body through his right abdomen.

Defendant and Tom Mills then "took off" in an automobile. John Mills was slightly wounded in the affray and remained at the tavern. Officers unsuccessfully looked for defendant and Tom Mills that night and the following morning, but later found them at the tavern in the afternoon and took them into custody.

Murder in the second degree is the killing of a human being wilfully, premeditatedly, and with malice aforethought, but without deliberation. § 559.020, RSMo 1969, V.A.M.S.; State v. Bruton, 383 S. W.2d 525 (Mo.1964); State v. Strong, 339 S.W.2d 759 (Mo.1960). Malice may be presumed from the intentional killing with a deadly weapon. State v. Hammonds, 459 S.W.2d 365 (Mo.1970). And, an assault with a deadly weapon used in such a way as will naturally, probably or reasonably produce death or jeopardize life, gives rise to the presumption of intent to kill. State v. Hammonds, supra.

Defendant argues that the state's evidence established legal justification for the killing because done in self-defense. And, in order to prevent the commission of a felony [by the deceased] on the Mills brothers. We do not agree. The jury could find that the evidence was overwhelming that defendant and the Mills brothers initiated the deadly assault on

Wilkerson and that the deceased's actions throughout were in a futile attempt to save himself. Further, that defendant and the Mills brothers were the aggressors throughout the affray and Wilkerson was attempting to escape their attack when defendant fired the fatal shot.

Defendant sought to exonerate himself by his testimony that (a) his actions were due to his defense of the Mills brothers in preventing Wilkerson from committing a felony against them and (b) the rifle was discharged accidentally as he and Wilkerson struggled for its possession. Although such defenses are on their face inconsistent, the court gave instructions on each. In view of the facts as heretofore stated, the jury could well reject both defenses.

■■ Defendant now complains that in addition to the foregoing defenses that the court should have given an instruction on self-defense. While it is true that self-defense is a part of the law of the case where there is evidence putting it in issue and by reason of Rule 26.02, V.A.M.R., and § 546.070, RSMo 1969, V.A.M.S., the trial court is required to instruct on it in such a situation whether or not requested to do so, and even though an instruction requested or submitted by defendant was defective. State v. Spencer, 307 S.W.2d 440 (Mo.1957). While the defenses of self-defense and accident are inconsistent, a defendant is entitled to have both submitted to the jury if proven by proper evidence [offered by the state or proved by third party witnesses for defendant]. State v. Baker, 277 S.W.2d 627 (Mo.1955).

■ "Self-defense . . . involves a claim that a life was taken by an intentional, affirmative act, made necessary upon a reasonable apprehension of a design on the part of the deceased to do the defendant great bodily harm." State v. Hale, 371 S.W.2d 249 (Mo.1963). Here, defendant's testimony was positive and unequivocal that the shooting was accidental and unintentional (while struggling for possession of the rifle) and clearly negates an intentional shooting in defense of his person. State v. Baker, supra, at 630. True, the defendant said he was apprehensive of harm to himself, as well as the Mills brothers, but in order to be entitled to instructions on the inconsistent defenses of accident and self-defense, the inconsistent elements must be shown by the state or a third party witness for the defendant. State v. Morris, 480 S.W.2d 825 (Mo. banc 1972); State v. Peal, 463 S.W.2d 840 (Mo.1971).

■ Additional reasons negate this defense by defendant. The right to kill in self-defense rests in real or apparently real, necessity. State v. Parker, 403 S.W. 2d 623 (Mo.1966); State v. McGee, 361 Mo. 309, 234 S.W.2d 587 (banc 1950); 40 C.J.S. Homicide § 115, 40 Am.Jur.2d, Homicide § 151 at 439. One who was the aggressor or who provoked the difficulty in which he killed another cannot invoke the right of self-defense to excuse or justify the homicide, unless he had previously, in good faith, withdrew from the combat in such a manner as to have shown his intention in good faith to desist. State v. Spencer, 307 S.W.2d 440 (Mo.1957); 40 C.J.S. Homicide § 117.

The uncontroverted evidence shows that one or both of the Mills brothers were struggling with (or beating) the decedent before the shooting while the latter was behind the steering wheel of his station wagon; that defendant came out of the tavern, went to the passenger side of the vehicle, reached in, got decedent's rifle, stuck the rifle barrel back in the station wagon and fired the mortal shot. In our view there was no real or apparent necessity for the killing of Wilkerson, ignoring the substantial evidence that defendant and the Mills brothers were the aggressors throughout.

■ Self-defense is a last resort and in order to justify a homicide on such grounds the doer of the homicidal act must have done everything in his power, consist-

ent with his own safety, to avoid the danger and avert the necessity, and he must retreat, if retreat be practicable. State v. Dettmer, 124 Mo. 426, 27 S.W. 1117 (1894); State v. Fraga, 199 Mo. 127, 97 S.W. 898 (1906); State v. Roberts, 294 Mo. 284, 242 S.W. 669 (1922). Rather than remain in the tavern, or retreat, the evidence is not in dispute that defendant actively pursued his victim who was attempting to escape. The trial court did not err in failing to give an instruction on self-defense.

The transcript further reveals that at the conclusion of all the evidence the court stated to defendant's attorney that two theories of defense had been presented, i. e., accidental and prevention of a felony on the Mills brothers. The court asked "are you asking the court and is it' your theory that the defendant is entitled to an ordinary self-defense instruction on the defense of Sherrill personally?" To this question counsel for defendant replied "No, sir". In view of our holding defendant was not entitled to a self-defense instruction, we do not reach possible questions of "waiver" or self-invited error.

Defendant next contends the evidence was insufficient to show that the shot which "allegedly killed" Wilkerson was fired by the defendant, accidentally or intentionally. He argues that the doctor could not positively identify the bullet as being the one removed from Wilkerson's body.

This contention overlooks the evidence that the fatal bullet was handed to the sheriff by the doctor; that the sheriff marked the bullet in the doctor's presence and made positive identification of the bullet at the trial; and, a ballistics examination showed the fatal bullet came from the Mossberg rifle. Only the deceased and defendant ever had control of the rifle and witnesses saw defendant stick the rifle barrel through the open station wagon window and fire what was determined to be the fatal shot. The point is without merit.

The information is sufficient in form and substance. The verdict is in proper form and responsive to the information and issues submitted. Allocution was granted and the sentence and judgment are proper and responsive to the verdict.

The judgment is affirmed.

TITUS, C. J., and STONE and HOGAN, JJ., concur.