**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Clifford Leon GARDNER, Defendant-Appellant.**

**No. 9383.**

Missouri Court of Appeals,
Springfield District.

Jan. 24, 1975.

Daniel, Clampett, Ellis, Rittershouse & Dalton, B. H. Clampett, Springfield, for defendant-appellant.

Charles M. LeCompte, Pros. Atty., David R. Fielder, Asst. Pros. Atty., Springfield, for plaintiff-respondent.

PER CURIAM.

Charged with the misdemeanor offense of driving a motor vehicle on a public highway in Greene County, Missouri, while his operator's license was revoked [§ 302.-321],[1] defendant Clifford Leon Gardner was found guilty upon trial by the court, trial by jury theretofore having been waived, and punishment was assessed at imprisonment in the county jail for ten days. When officers halted and cited defendant on South Glenstone Avenue, a heavily-traveled thoroughfare in Springfield, Missouri, he admittedly was driving a vehicle while his operator's license was revoked. However, defendant here seeks reversal of his conviction on the ground, as stated in his "Points Relied On," that the evidence, in its entirety, (a) established that the vehicle driven by defendant *"was not a motor vehicle* or, alternatively . . . was insufficient to support a finding that it was a motor vehicle" and (b) established that such vehicle *"was a farm tractor within the definition thereof found in § 302.010*[2] or alternatively . . . was insufficient to support a contrary finding." (Except where otherwise stated, all empha-

---

1. Section 302.321 titled "Driving without license—penalty," in pertinent part provides: "Any person whose operator's or chauffeur's license . . . has been canceled, suspended or revoked as provided in this chapter, and who drives any motor vehicle upon the highways of this state while such license . . . is canceled, suspended or revoked, is guilty of a misdemeanor and on conviction therefor shall be punished by confinement in the county jail for a term not exceeding one year . . . ." The date of the charged offense was June 28, 1972, and thus prior to August 13, 1972, the effective date of S.B. No. 651 [Laws 1972, p. 945] by which § 302.321 and other statutes were amended in certain particulars not here relevant or material. Except as otherwise specifically noted, all statutory references herein are to RSMo 1969, V.A.M.S.

2. Sec. 302.010 defines fifteen words and phrases, as used in Chapter 302 dealing with "Drivers' and Chauffeurs' Licenses." Subsec. (6) of that statute defines *"farm tractor"* as "every motor vehicle designed and used primarily as a farm implement for drawing plows, mowing machines and other implements of husbandry". Subsec. (9) defines *"motor vehicle"* as "any self-propelled vehicle not operated exclusively upon tracks".

sis herein is ours.) Although not clarified or elucidated in either the "Points Relied On" or the "Argument" section of defendant's brief, we divine that counsel's endeavor is to bring defendant within the statutory exemption from the motor vehicle operator's license law afforded by § 302.-080(1) to "[a]ny person while driving or operating any . . . farm tractor . . . temporarily operated or moved on a highway."

■ *Was defendant's vehicle a "motor vehicle?"* In pressing their contention that this inquiry should be answered in the negative, defendant's counsel first quote the definitions of "motor vehicle" and "vehicle" in § 301.010,[3] the definition statute in *Chapter 301* dealing with "Registration and Licensing of Motor Vehicles and Outboard Motors." However, those statutory definitions in *Chapter 301* are neither controlling nor relevant in the case at bar, in which defendant was charged with an offense under *Chapter 302* dealing with "Drivers' and Chauffeurs' Licenses," to wit, with a violation of § 302.321 by driving a motor vehicle while his operator's license was revoked. See State v. Schwartzmann Service, 225 Mo.App. 577, 583, 40 S.W.2d 479, 481(9) (1931). And indeed in their argument defendant's counsel subsequently pronounce "pertinent" the definition of *"farm tractor"* in § 302.-010(6) as *"every motor vehicle* designed and used primarily as a farm implement for drawing plows, mowing machines and other implements of husbandry". Since defendant asserts that his vehicle was a "farm tractor," and since the "pertinent" definition in this prosecution under § 302.-321 declares that a "farm tractor" is a "motor vehicle," defendant's elaborate and involved argument designed to support the contention that his vehicle was *not* a motor

vehicle becomes self-destructive and falls of its own weight.

■ *Was defendant's vehicle a "farm tractor within the definition thereof found in § 302.010,"* quoted supra and also marginally in note 2? The vehicle being driven by defendant at the time of his citation was, as stated in the trial court's comprehensive findings of fact, conclusions of law, and judgment, "part Harley Davidson, part Volkswagen, and part homemade," and for the same reason assigned by the trial court, to wit, "for want of a better name," we brand this vehicle with the sobriquet there suggested, to wit, "Gardnermobile." After personal inspection of the Gardnermobile on the day of trial, the court included in his findings of fact this detailed description thereof:

"[A] three-wheel, self-propelled vehicle. The machine is 10′ 6″ long and 5′ 6″ wide at the rear wheels. The front tire is a 5:00 x 16 motorcycle tire mounted on a motorcycle wheel and axle. The lower fork is from a motorcycle, as are the handlebars, grips, and gas tank. The frame attaching the front end to the rear end is homemade. The rear end is primarily a Volkswagen and consists of transmission, engine, axle, part of frame, torsion bar, and wheels. The engine has four cylinders, is air-cooled, and has a starter and generator. It has four forward speeds and a reverse.

"The machine has no trailer hitch and no recognizable method of fastening attachments to it. It does not have an A frame or drawbar assembly . . . ."

Officer Dean testified that, when stopped and cited on Glenstone Avenue, defendant said that "it [the Gardnermobile] wasn't really a motorcycle, really

---

3. Subsec. (17) of that statute defines *"motor vehicle"* as "any self-propelled vehicle not operated exclulsively upon tracks, except farm tractors;" and subsec. (30) defines *"vehicle"* as "any mechanical device on wheels, designed primarily for use on highways, except those propelled or drawn by human power, or those used exclusively on fixed rails or tracks." We observe that, in this excursion into irrelevant statutory territory, counsel ignore the definition of *"farm tractor"* in subsec. (7) as "a tractor used exclusively for agricultural purposes".

wasn't a car, really was a mixture of all three—Harley Davidson and Volkswagen and Chevrolet" but that "he didn't have to have a driver's license; it was his tractor." Dean noted that the Gardnermobile had "a so-low motorcycle seat" whereas "tractors usually have a bench-type seat with . . . padded back support." There was no trailer hitch on the Gardnermobile and nothing was attached to it at that time. Defendant said something to the effect that "he didn't have a blade or anything on it, but he was going to find one or have one sharpened or repaired or something . . . get a blade to cut grass."

When the trial judge subsequently inspected the Gardnermobile on the day of trial, he observed, as recorded in his findings of fact, that:

> "[A] hand push lawnmower was attached to the machine. It was 1′ 9″ wide and the handle was 3′ 6″ long. It was attached to the lower part of the frame with bailing wire and was dragged along backwards behind and between the two rear wheels. The solid rubber tires of the mower had numerous flat places on them, which indicated the mower was being dragged along while the blade was not turning. The blade was dull, rusty, and showed no signs of use."

After citing and quoting all of the relevant statutory provisions, the trial court concluded that:

> "Viewing all of these statutes in their proper context and applying them to the facts in this case, the court is of the opinion that the Gardnermobile is a motor vehicle and not a farm tractor. It does not have any trailer hitch or implement attaching apparatus on either front or rear. It would not have any stability, weight, balance, or gear ratio compatible with its use as a tractor. The fact that a motor vehicle *could* be used to pull a mower or disc is not enough. If that were true, a Cadillac convertible could meet the test. Although defendant did introduce some evidence that the Gardnermobile had been used to mow grass, and, in one case, to disc a garden, the physical evidence and physical facts strongly refute defendant's contention that his homemade machine is designed and used primarily as a farm implement for drawing plows, mowing machine[s], and other implements of husbandry." (Emphasis by trial court.)

Several photographic exhibits received in evidence confirm the trial court's description of the Gardnermobile and afford substantial support for his finding that it was not a farm tractor.

In this jury-waived case, the findings of the trial court "have the force and effect of the verdict of a jury." Rule 26.01(b), V.A.M.R. And, in determining the sufficiency of the evidence to support those findings and the judgment, the evidence and all reasonable inferences deducible therefrom must be considered in the light most favorable to the State and all evidence and inferences to the contrary must be rejected. State v. Summers, 506 S.W.2d 67, 69(1) (Mo.App.1974); State v. Sherrill, 496 S.W.2d 321, 323(1) (Mo.App. 1973); State v. Boone, 490 S.W.2d 318, 320(1) (Mo.App.1973). It is not our function or prerogative to weigh the evidence for the purpose of determining whether the charge was proven beyond a reasonable doubt, that being a matter for determination by the trier of the facts, in this instance the trial court. State v. Strong, 484 S.W.2d 657, 661(10) (Mo.1972); State v. Achter, 514 S.W.2d 825, 826(2) (Mo.App. 1974). With those principles in mind, we conclude that the trial court reasonably could have found that the Gardnermobile was a motor vehicle and not a farm tractor and that defendant was guilty, as charged.

The judgment is affirmed.

All of the judges concur, except FLANIGAN, J., not participating.