Jackie SHERRILL, Petitioner,

v.

Donald WYRICK, Warden,
Respondent.

No. 74–823C (2).

United States District Court,
E. D. Missouri, E. D.

Jan. 29, 1975.

Jackie Sherrill, pro se.

Paul Robert Otto, Asst. Atty. Gen.,
Jefferson City, Mo., for respondent.

MEMORANDUM AND ORDER

REGAN, District Judge.

Petitioner is serving a sentence of 25
years imprisonment following his convic-
tion in the Circuit Court of Crawford
County. The conviction was affirmed in

State v. Sherrill, Mo.App., 496 S.W.2d 321. Petitioner unsuccessfully sought postconviction relief pursuant to Missouri Supreme Court Rule 27.26, V.A. M.R. State v. Sherrill, Mo.App., 515 S.W.2d 611. This petition for a writ of habeas corpus followed.

Petitioner, jointly with Tom and John Mills, was charged with murder in the first degree At his separate trial he was represented by an experienced counsel of his own choosing, Dorman Steelman. At petitioner's request, the trial court submitted two apparently inconsistent defenses, that defendant was acting in defense of the Mills brothers in preventing the deceased from committing a felony against them, and that the rifle from which the fatal shot was fired was accidentally discharged as petitioner and the deceased struggled for its possession. The jury rejected a finding either of first degree murder or of manslaughter and found petitioner guilty of second degree murder. The pertinent facts are set forth in the opinion of the Missouri Court of Appeals, Springfield District, in 496 S.W.2d 321.

Steelman represented petitioner on his direct appeal. Basically, that appeal questioned only the sufficiency of the evidence and the failure of the trial court to instruct on personal self-defense. Neither point is here involved. In the Rule 27.26 motion petitioner alleged that he had ineffective assistance of counsel in that two instructions, not objected to, improperly shifted the burden of proof and in that his counsel failed to call "five material witnesses that testified at the trial of Mills that would have shed light on movant's innocence." Essentially, the same matters are here alleged.

■ With respect to the failure to call the witnesses, we note, as did the state courts, that petitioner's Rule 27.26 motion did not name the witnesses he referred to or set forth even by way of summary, the testimony they would have given. Even the habeas corpus petition filed in this Court is deficient in that respect. Not until petitioner filed his traverse was any attempt whatever made to show the alleged substance of the testimony of the witnesses. Because of the failure to factually support petitioner's conclusory allegations, no evidentiary hearing was held in the state court, with the result that the state courts have never had an opportunity to consider the materiality of the missing testimony or the prejudicial effect, if any, of counsel's failure to call the witnesses.

Unlike McQueen v. Swenson, 8 Cir., 498 F.2d 207, the present complaint is not that petitioner's retained counsel did not investigate the case or interview possible witnesses, but rather that certain of those witnesses who subsequently testified in the trial of the Mills case months later had not been called in petitioner's trial. In *McQueen,* the constitutional violation was the failure of the attorney to make an adequate *investigation* of the case. No such charge is here made.

What is here involved is merely the judgment of Mr. Steelman, the retained attorney, as to which witnesses should be called. Both of the Mills brothers testified for petitioner, as did others. Assuming that the persons now identified by petitioner would have testified to the effect he alleges, such testimony, at best, would have been merely cumulative of testimony already presented. In addition, the matters to which these persons would have testified do not go to the heart of the case.

Petitioner's own testimony was to the effect that he voluntarily left a place of safety within the tavern (from which he was throwing beer cans at deceased), that he proceeded to the latter's station wagon where he seized the rifle, and that the gun discharged, apparently accidentally, while petitioner was struggling with the deceased for the rifle. The

State's evidence painted a different picture. It showed that while the Mills brothers were struggling with or beating the deceased, petitioner reached in, got the rifle, stuck the rifle back in the station wagon, and deliberately fired the mortal shot.

Petitioner does not contend that any of the proposed witnesses saw what occurred at the station wagon. The mere fact that they testified at the Mills' trial would not, of itself, warrant the conclusion that the jury's manslaughter finding in that trial resulted from their testimony.

"The calling or not calling of witnesses is a matter normally within the realm of the judgment of counsel." Poole v. United States, 8 Cir., 438 F.2d 325, 326. An attorney's "decision to call or bypass particular witnesses is peculiarly a question of trial strategy." United States ex rel. Walker v. Henderson, 2 Cir., 492 F. 2d 1311, 1314. On the record here, we find no reason to fault or second-guess the trial tactics of counsel, even if in hindsight it becomes apparent that the result would have been no worse had these witnesses testified.

■ The remaining contention is that counsel was ineffective because he failed to object to the giving of two instructions which petitioner contends improperly shifted the burden of proof. Instruction 9 submitted the defense of attempting to prevent an attack upon the Mills brothers, and Instruction 10 submitted the defense of accident. These instructions read as follows:

"INSTRUCTION NO. 9

One of the issues presented by the evidence is that the defendant committed an assault upon deceased for the purpose of preventing a felony about to be committed upon the person of JOHN MILLS or TOM MILLS.

In this regard, the court instructs the jury that if you find and believe by the preponderance or greater weight of the evidence in this case that the defendant JACKIE SHERRILL, had reasonable cause to, and did believe GEORGE OLIVER WILKERSON was about to assault JOHN MILLS or TOM MILLS with the .22 calibre rifle mentioned in the evidence and thereupon the defendant shot and killed George Oliver Wilkerson for the purpose of preventing a felony about to be committed upon the person of JOHN MILLS or TOM MILLS, then the defendant is not guilty of any crime and you should acquit the defendant on the ground of justifiable homicide.

INSTRUCTION NO. 10

Another issue presented by the evidence is that the shooting was accidental; that is the defendant did not intend to shoot George Oliver Wilkerson.

The court instructs the jury that by the term "accidental" or "accident", is meant an event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event.

The court further instructs the jury that if the jury finds by the preponderance or greater weight of the evidence, that the shooting was accidental or if there is a reasonable doubt as to whether or not the defendant intentionally shot George Oliver Wilkerson, it is the duty of the jury to give the defendant the benefit of the doubt and acquit him on the grounds of excusable homicide."

What petitioner contends, citing the case of State v. Minnis, Mo., 486 S.W.2d 280, is that these instructions as drafted could have been understood by the layman jury as placing on petitioner the burden of proof as to his defenses. However, alleged error in the giving of instructions which are not timely objected to or complained of on direct review of a conviction may not ordinarily be the basis for collateral relief. Margoles v. United States, 7 Cir., 407 F.2d 727, 735. Erroneous instructions may be collaterally attacked only where "the error

had such an effect on the trial as to render it so fundamentally unfair that it constitutes a denial of a fair trial in a constitutional sense." Lorraine v. United States, 10 Cir., 444 F.2d 1, 2. Stated otherwise, the effect of the error must be a miscarriage of justice. Tallman v. United States, 7 Cir., 465 F.2d 282, 287.

The instructions now under attack did not deny petitioner a fair trial or result in a miscarriage of justice, certainly not in a constitutional sense. This is particularly true in light of Instruction 2 placing the burden of proving petitioner's guilt on the State and directing an acquittal if, upon a consideration of all the evidence, the jury has a reasonable doubt of petitioner's guilt. And we note that Instruction 10 specifically states that if there is any reasonable doubt as to whether petitioner intentionally shot the deceased, it is the duty of the jury to give him the benefit of the doubt and acquit him.

Petitioner apparently recognizing that the giving of erroneous instructions and other trial errors may be complained of only on direct appeal, nevertheless seeks to obtain such a review by charging his retained attorney with ineffective assistance by reason of the failure to object to the instructions. On that theory, every trial error would be subject to collateral attack. However, it is well settled that perfect or errorless counsel is not a prerequisite to a fair trial consonant with due process. Cardarella v. United States, 8 Cir., 375 F.2d 222, 232.

We need not determine whether the instructions are in fact erroneous. What we hold is simply that counsel's failure to present the alleged error for direct appellate review or to assign error as to instructions in the direct appeal, in the totality of the trial record, may not be equated with ineffective representation. Whatever label is to be applied to the standard for judging effectiveness of counsel in the trial of a criminal case, it is apparent to us that petitioner's retained counsel met the approved standard. Petitioner received a fair trial.

No hearing is required. The petition for a writ of habeas corpus should be and it is hereby denied.