Jackie **SHERRILL,**
**Petitioner-Appellant,**

v.

Donald **WYRICK, Warden,**
**Respondent-Appellee.**

No. 75–1110.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1975.

Decided Oct. 17, 1975.
Certiorari Denied Feb. 23, 1976.
See 96 S.Ct. 1134.

Clyde C. Farris, Jr., Clayton, Mo., for appellant.

Robert M. Sommers, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and VAN PELT,* Senior District Judge.

VAN PELT, Senior District Judge.

This is an appeal from an order denying to appellant a writ of habeas corpus sought under 28 U.S.C. § 2253.

Petitioner is serving a sentence imposed by the Circuit Court of Crawford County, Missouri, for second degree murder, and affirmed in *State v. Sherrill*, 496 S.W.2d 321 (Mo.App.1973). He was represented at the trial by experienced counsel, personally selected and compensated by him.

Petitioner together with Tom and John Mills were charged with murder in the first degree of George Oliver Wilkerson, whose death occurred at approximately ten o'clock p. m. on July 9, 1971 at the 49 Club located in Annapolis, Iron County, Missouri.

The case as submitted against appellant included possible verdicts of first degree murder, second degree murder and manslaughter. In a later trial of the Mills brothers they were found guilty of manslaughter.

The facts are fully set forth in 496 S.W.2d *supra*, and in part in *Sherrill v. State*, 515 S.W.2d 611 (Mo.App.1974), where petitioner unsuccessfully sought post-conviction relief under Missouri Supreme Court Rule 27.26. We shall, in part only, hereinafter set forth the facts necessary for our decision.

The error assigned in this court is inadequate legal representation in the trial court in that counsel failed to object to Instructions numbered 9 and 10 submitted to the jury, and in that counsel failed to call five material witnesses to testify on appellant's behalf. We affirm the trial court for the reasons hereinafter set forth.

At the outset, we again repeat that appellant was represented by counsel of his own choosing who was skilled in the trial of criminal cases.

We also recognize that trial tactics are easily subject, when the jury's verdict is adverse, to Monday morning quarterbacking.

* ROBERT VAN PELT, Senior District Judge, District of Nebraska, sitting by designation.

We have examined Instructions numbered 9 and 10. No objection was made to either. The instructions complained of related to appellant's two defenses, namely, that he committed an assault on Wilkerson[1] to prevent Wilkerson committing a felony on the Mills brothers and that the shooting was accidental. We agree with counsel that defenses do not have to be consistent.

Both instructions use language to the effect that if the jury find and believe either defense by the preponderance or greater weight of the evidence, then they should acquit, and Instruction number 10 adds that if there is reasonable doubt as to whether appellant intentionally shot Wilkerson, he should be given the benefit of the doubt and the jury should acquit him. We are thus confronted here with instructions to which no exception was taken. The court could easily have stricken the language relating to preponderance of the evidence, had complaint been made. Thus our question is not whether the instructions were erroneous but whether the failure of counsel to object has resulted in a miscarriage of justice.

It is hornbook law that the burden of proof is on the State to prove a defendant's guilt beyond a reasonable doubt. It is hornbook law that the instructions are to be read together. We conclude that neither instruction shifted the burden of proof, which clearly by Instruction number 2 had been placed on the State. The trial judge in other parts of the charge stated more than once that the State must find appellant guilty beyond a reasonable doubt. We do not believe the jury was misled by either of these instructions as to burden of proof and the necessity of finding guilt beyond a reasonable doubt.

It is clear that a defendant is entitled to a fair trial, and that a perfect trial is seldom obtainable. This court has said, "Perfect or errorless counsel is not required as a prerequisite to a fair

trial consonant with due process." *Cardarella v. United States*, 375 F.2d 222, 232 (8th Cir. 1967). The applicable test is whether the two instructions, to which no objection was taken at the trial, were "so completely erroneous as to result in a miscarriage of justice." *Johnson v. United States*, 291 F.2d 150 (8th Cir. 1961).

Measured by these standards, we conclude that the issues were fairly presented; that defendant's guilt is supported by the evidence; that there has been no miscarriage of justice.

The problem presented by the failure to call five named witnesses is in many respects similar.

The Missouri Court of Appeals recites the facts as follows:

Wilkerson, from St. Louis, was a comparative stranger to the locale and arrived at the 49 Club in the early evening of the night in question. He was driving a 1960 Ford station wagon and in this vehicle was a .22 caliber Mossberg rifle.

Inside the tavern Wilkerson and John Mills engaged in a game of pool and an argument ensued over the results of a wager between them. This was apparently resolved by a tavern employee instructing Wilkerson to pay John Mills, which Wilkerson proceeded to do. About this time defendant and Tom Mills entered the tavern whereupon John Mills "got a little loud". The employee then asked Wilkerson to leave. As Wilkerson walked out the door the defendant said "Get that son-of-a-bitch." The Mills brothers immediately went out the door after Wilkerson. Defendant went to the doorway, began throwing beer bottles at Wilkerson and called out that "there were some guns in the front seat of the car."

The area in front of the tavern was illuminated by a light. Tom Mills began firing a pistol at Wilkerson, John

---

1. Actually, as is hereafter pointed out, he held the rifle the discharge of which at short range killed Wilkerson.

Mills was throwing large rocks at him, and defendant continued to hurl beer bottles. Wilkerson was near his station wagon and obtained the rifle and began firing it in the direction where the Mills brothers were located. During a lull in the battle Wilkerson got in the station wagon with the rifle, started the motor, and started backing it away from where it had been parked. The station wagon's movement was halted by a vehicle parked behind it and when a slight collision occurred the station wagon stopped.

The Mills brothers ran to the driver's side of the station wagon and grabbed and began striking Wilkerson with their fists. Defendant left the doorway of the tavern and ran to the opposite side of the station wagon. He threw a beer bottle through the open front window and then "he reached in the car and got the rifle" and "stuck it right back in the car [station wagon]" and fired the rifle. Defendant withdrew the rifle, wiped it off, and laid it in the back seat.

Wilkerson was then pulled from beneath the steering wheel of the station wagon by the Mills brothers who proceeded to kick and stomp him as he lay on the ground. His death was due to a bullet from the rifle which entered his body through his right abdomen.

Defendant and Tom Mills then "took off" in an automobile. John Mills was slightly wounded in the affray and remained at the tavern. Officers unsuccessfully looked for defendant and Tom Mills that night and the following morning, but later found them at the tavern in the afternoon and took them into custody. *State v. Sherrill*, 496 S.W.2d at 324.

While some of these facts are in dispute, the recited version is one the Missouri court said the jury could reasonably find as the facts giving rise to Wilkerson's death. We agree.

The named witnesses, all of whom testified at the Mills trial, held after appellant's trial, would have testified according to appellant's affidavit, that appellant "was shot at by the deceased in the tavern"; that Wilkerson shot both the Mills brothers; that Wilkerson shot at appellant outside the tavern and one would have testified that he saw appellant shot at when he opened the tavern door.

Appellant's testimony was that when he opened the tavern door he was hit by splinters of wood (it is to be inferred from a bullet which struck the door or casing) and then he started throwing beer bottles at Wilkerson.

 The important moments in this case are not the period covered by these witnesses, or the time when appellant told the Mills brothers "Get that son-of-a-bitch," or the time of the stomping the Mills brothers gave Wilkerson after he was shot. The important time begins when Wilkerson got into his car and started to back it, as though to leave, and ends when the gun appellant was holding discharged. These witnesses add nothing to this part of the story and they do not tell us what appellant was doing between the time he left the tavern door to run to the car and the time the gun discharged.

The testimony at best was cumulative. It was not entirely consistent. It is certain Wilkerson didn't shoot at appellant in the tavern, as appellant claims Mr. Deboard would state. Wilkerson only had a gun when he was outside the tavern. Trial counsel could well have felt that the witnesses would do his client more harm than good. There is nothing before us as to whether they were subject to impeachment, a fact that often influences counsel in such a choice.

This is not a case handled by court-appointed counsel who was young and inexperienced. As Judge Regan so aptly stated, "On the record here, we find no reason to fault or second-guess the trial tactics of counsel."

A writ of habeas corpus is not a substitute for an appeal. Errors in state court proceedings, not objected to at the time, unless they render the trial so fundamentally unfair that they constitute a denial of constitutional rights, do not justify federal court action. *Rhay v. Browder*, 342 F.2d 345 (9th Cir. 1965); *Lorraine v. United States*, 444 F.2d 1 (10th Cir. 1971); *Margoles v. United States*, 407 F.2d 727 (7th Cir. 1969), *cert. den.* 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84 (1969).

"The calling or not calling of witnesses is a matter normally within the realm of the judgment of counsel." *Poole v. United States*, 438 F.2d 325, 326 (8th Cir. 1971); and his judgment will not be "second-guessed by hindsight." *United States v. Hager*, 505 F.2d 737, 739 (8th Cir. 1974).

### CONCLUSION

We do not find that action of counsel in the original trial "made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court." *Cardarella v. United States, supra* at 230.

We do find that appellant has not carried the burden of proving "unfairness." *McQueen v. Swenson*, 498 F.2d 207 (8th Cir. 1974).

We find ample evidence for a jury to conclude the defendant guilty of second degree murder. We agree with the Missouri appellate court when it said, "In our view there was no real or apparent necessity for the killing of Wilkerson. . . ." We, therefore, affirm the order from which this appeal is taken.