**TRAILINER CORPORATION,**
Appellant,

v.

**DIRECTOR OF REVENUE,**
Respondent.

No. 71793.

Supreme Court of Missouri,
En Banc.

Feb. 13, 1990.

Robert L. Hyder, Jefferson City, for appellant.

J. Kent Lowry, Jefferson City, for amicus curiae.

William L. Webster, Atty. Gen., Mark S. Siedlik, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

In this appeal, the dispositive issue is whether the term "motor vehicles" in § 144.030.2(3)[1] encompasses refrigerated or other large trailer units used as common carriers in the interstate transportation of persons and property. We conclude that such trailer units fall within the purview of the section and purchases of repair and replacement parts therefor are entitled to the exemption from state and local sales tax provided by the statute. The cause involves construction of the revenue laws, bringing it within the bounds of this Court's original appellate jurisdiction. Mo. Const. art. V, § 3.

Trailiner Corporation (Trailiner), based in Springfield, Missouri, is a New Jersey corporation licensed to do business in this state as a common carrier. It operates exclusively in interstate commerce transporting frozen perishables by use of truck-tractors pulling refrigerated trailer units. In September of 1987, agents of the Director of Revenue (Director) conducted an audit of Trailiner's records for the period August 1, 1982, through July 31, 1987. From this audit, the Director assessed addi-

---

1. All statutory references are to RSMo 1986 unless otherwise stated.

tional taxes, interest and penalties of reportedly delinquent sales/use taxes on Trailiner's purchases of replacement and repair parts for its refrigeration trailer units.[2] Two separate installments of assessments were mailed to Trailiner in 1988, the first on February 26 and the second May 13. Trailiner appealed to the Administrative Hearing Commission on May 24 of that year, contending the items assessed for sales/use tax were exempt under § 144.030.2(3).

The Commission[3] ruled it could not entertain an appeal from the February 26, assessment because the allotted time had expired prior to Trailiner filing its appeal. § 621.050.1. That ruling as to timeliness appears valid on its face and is not challenged here by appellant. As to the May 13, assessments, the Commission determined that the term "motor vehicle" in § 144.030.2(3), RSMo Supp.1988,[4] did not include trailers and affirmed the Director's assessment. The Commission also held that a new policy position of the Director promulgated January 1, 1988, exempting trailers under § 144.030.2(3) was erroneous and nullified the same.[5]

Although Trailiner raises three points on appeal, we need only address the first because its resolution puts the matter to rest. Trailiner asserts that the term "motor vehicles" in § 144.030.2(3) includes trailers of the type Trailiner employs in its day-to-day operations. Section 144.030.2(3) exempts from local and state sales tax:

Materials, replacement parts and equipment purchased for use directly upon, and for the repair and maintenance or manufacture of, *motor vehicles*, watercraft, railroad rolling stock or aircraft *engaged as common carriers of persons or property* ... (Emphasis added.)

To bolster its argument in support of the claimed exemption, Trailiner directs our attention to § 144.030.2(11), effective August, 1985, which supplanted § 144.030.3(10), RSMo 1978. These subsections deal with the "purchase of motor vehicles" as distinguished from the purchase of "parts" in the subsection under consideration. The earlier statute exempted from sales/use tax railroad rolling stock, but this exemption was broadened in 1985 by § 144.030.2(11) to include motor vehicles licensed for a gross weight of 24,-000 pounds and certain trailers. More specifically, that subsection reads:

Railroad rolling stock for use in transporting persons or property in interstate commerce and *motor vehicles* licensed for a gross weight of twenty-four thousand pounds or more *or trailers used* by common carriers as defined in section 390.020, RSMo, solely *in the transportation of persons or property* in interstate commerce ... (Emphasis added.)

Further, § 390.020(6), a definitional statute referenced in the above-cited subsection, states:

"Common carrier", any person which holds itself out to the general public to engage in the *transportation by motor*

---

2. Most of the alleged delinquent sales tax was assessed on "recapped" tires purchased by Trailiner for its refrigerated trailer units.

3. The Honorable J. William Campbell heard the evidence in this matter but, tragically, met an untimely death before determining the issue. The Honorable Paul R. Otto authored the decision now in question.

4. The subsection in question, § 144.030.2(3), RSMo Supp.1988, has been included as a part of numerous enactments in the years since 1978, which was then § 144.030.3(2), RSMo 1978.

5. It was the Director's policy from 1979 until December 31, 1987, to interpret the statute as *not* providing the exemption sought here. However, on January 1, 1988, *after* the audit in

question but prior to mailing the assessments to the taxpayer, the Director reversed his policy, having determined that indeed the statute *did provide* such exemption. The Commission in 1988 determined that the Director's reversal of policy was incorrect, holding that the statute *does not* afford the exemption now under consideration for trailers. On the other hand, the taxpayer has always claimed an exemption under the statute and has never paid sales tax on such transactions. Thus, there has been uncertainty as to the scope of the statutory exemption and it may be fairly said a latent ambiguity has been discovered by the taxing authorities. Because we now reach a result contrary to that of the Commission, the Director, in the formulation of any new policy statement or regulations, shall proceed in accordance with the views herein expressed.

*vehicle of passengers or property* for hire or compensation upon the public highways and airlines engaged in intrastate commerce ... (Emphasis added.) "Motor vehicle" is further defined in § 390.020(19) as:

... any vehicle, truck, truck-tractor,[6] *trailer, or semitrailer,* motor bus or any self-propelled vehicle used upon the highways of the state in the *transportation of property or passengers* ... (Emphasis added.)

While, as mentioned above, the tax consequences of sales of trucks and trailers is not before us for determination, the legislative extension of the exemptions to such sales is accompanied by the reference to definitions in § 390.020 effectively removing any doubt as to legislative intent. It is significant that the 1985 statute which repeats the explanatory theme of trucks or trailers used "in the transportation of persons or property" is consistent with the theme woven into the language of § 144.030.2(3). In essence, Trailiner persuasively argues that the definition to be given "motor vehicle" in § 144.030.2(3) should be that found in § 390.020(19).

 When examining for the meaning of statutory enactments, our primary role is to ascertain the intent of the legislature from the language used and give effect to that intent if possible. *King v. Laclede Gas Co.,* 648 S.W.2d 113, 115 (Mo. banc 1983). In so doing the words in the statute are to be considered in their plain and ordinary meaning. *Donahue v. City of St. Louis,* 758 S.W.2d 50, 52 (Mo. banc 1988). Tax statutes are to be strictly construed in favor of the taxpayer and against the taxing authority, *Staley v. Missouri Director of Revenue,* 623 S.W.2d 246, 250 (Mo. banc 1981); however, exemption provisions are construed against the taxpayer. *Missouri Public Service Co. v. Director of Revenue,* 733 S.W.2d 448, 449 (Mo. banc 1987).

 We note that § 144.030.2(3) exempts materials, replacement parts and equipment purchased to repair and maintain motor vehicles "engaged as common carriers of persons or property". Common sense dictates that a truck-tractor without a connected trailer is neither equipped, designed nor intended to transport property or persons other than a driver (and perhaps a relief driver) and personal belongings. The Director conceded in oral argument that truck-tractors *do* meet the exemption requirements under § 144.030.2(3) as motor vehicles engaged as common carriers of persons and property. Nevertheless, the Commission somehow determined a trailer was not intended by the legislature to be included in the exemption. It so found though a truck-tractor can only be engaged as a "common carrier" to transport persons and property when connected to and used in conjunction with a trailer. Manifestly, without such a trailer, a truck-tractor is little more than an oversized, odd-shaped automobile and not a carrier for the transporting of persons and property.

The Director asserts that the proper definition for "motor vehicle" is to be found in Chapter 301 relating to registration and licensing of motor vehicles. In § 301.010(26) "motor vehicle" is defined as "any self-propelled vehicle not operated exclusively upon tracks, except farm tractors and all-terrain vehicles." Further, § 301.010(48) defines trailer as:

"Trailer", any vehicle without motive power designed for carrying property or passengers on its own structure and for being drawn by a self-propelled vehicle, except those running exclusively on tracks, including a semitrailer or vehicle of the trailer type so designed and use in conjunction with a self-propelled vehicle ...

From this, the Director contends the legislature must have meant for a trailer to be considered separate and distinct from the

---

**6.** In the 1978 version of this definition no comma appeared between the words "truck-tractor" and "trailer." While it might be argued this is an error of punctuation, if, on the other hand, the omission was intentional it is nevertheless clear the legislature in 1978 intended that "truck-tractor trailer" combinations used "in the transportation of property or passengers" were to be included in the definition of motor vehicles for purposes of the regulation of motor carriers by the division of transportation under Chapter 390. Nothing in those sections indicates a different legislative intent must be found when we address § 144.030.2(3).

term "motor vehicle" for purposes of § 144.030.2(3), because it defined the terms separately under the licensing and registrations provisions of Chapter 301. This reliance upon § 301.010(26) for the definition of "motor vehicle" is of little relevance to our resolution of the issue here. In our perusal of current statutes, we find the term "motor vehicle" is specifically defined no less than ten times through the various chapters.[7] Each differs to meet the discrete goals addressed during adoption of the several statutes. A case in point is *State v. Gardner,* 518 S.W.2d 670 (Mo.App. 1975), where the court of appeals held the definition of "motor vehicle" for offenses charged under Chapter 302 was exclusive of that found in Chapter 301 because each chapter dealt with different issues and not necessarily interrelated problems. *Id.* at 672.

The Director's reliance upon § 301.010(26) provides little support for his contention. In *State v. Harper,* 353 Mo. 821, 184 S.W.2d 601 (1945), this Court found that although "motor vehicle" and "trailer" were defined separately in Chapter 301 dealing with registration and licensing of motor vehicles, nevertheless:

> Motor vehicles primarily function to transport persons and things. Trailers facilitate this function; but only, under the statutory definition, after being attached to a motor vehicle for that purpose. They thereupon become a part of the motor vehicle for transportation purposes. *Id.,* 184 S.W.2d at 605.

Similarly, it has been held that where a trailer is attached to a truck-tractor it is part of the "motor vehicle" for purposes of statutes which regulate length, height and gross weight of "motor vehicles" operating on the highways of this state. *State v. Schwartzmann Service, Inc.,* 225 Mo.App. 577, 40 S.W.2d 479, 481 (1931).

Finally, another compelling argument convinces us the legislature did not intend to narrowly restrict the definition of "motor vehicle", as the Director contends. If the Director's interpretation were correct, the law would exempt the repair of trailers

while attached to truck-tractors, but tax those repaired while not so linked. This would produce an absurd result and we always presume the legislature did not intend an absurd result and the canons of construction favor interpretations avoiding unjust and unreasonable ends. *Schneider v. State Division of Water Safety,* 748 S.W.2d 677, 678 (Mo. banc 1988).

We hold that for purposes of the sales/use tax exemption in § 144.030.2(3), trailers used as common carriers of property and persons meet the definition of "motor vehicles" and, therefore, qualify for the exemption provided by the statute.

Reversed and remanded for entry of decision consistent with the views expressed herein.

All concur.

---

**7.** §§ 142.010(6), 142.362(5), 150.013.1(2), 300.-010(15), 301.010(26), 302.010(9), 303.020(5), 365.020(5), 390.020(19) and 407.560(6).